600 So.2d 801 (1992)
David RICHARDSON, Jr., et al.
v.
AVONDALE SHIPYARDS, INC., et al.
No. 92-CA-15.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1992.
Daniel Frazier, Jr., Marrero, for plaintiffs-appellants David Richardson, Jr., et al.
Brian C. Bossier and Robert E. Caraway, III, Blue, Williams & Buckley, Metairie, for defendants-appellees Avondale Industries, Inc., J.M. Garrett, Henry "Zac" Carter, Peter Territo, and Raymond Young.
Donald A. Hoffman and Paul J. Politz, Hoffman, Sutterfield, Ensenat & Bankston, P.C., New Orleans, for defendant-appellee Mine Safety Appliances Co.
Andrew L. Plauche, Jr., Plauche, Maselli & Landry, New Orleans, for defendant-appellee American Motorists Ins. Co.
Ralph S. Hubbard and David A. Bowling Friend, Wilson, Draper, Hubbard & Bowling, New Orleans, for defendant-appellee Travelers Ins. Co.
Samuel M. Rosamond, III, Boggs, Loehn & Rodrigue, New Orleans, for defendant-appellee Commercial Union Ins. Co.
James F. Holmes and Geoffrey P. Snodgrass, Christovich & Kearney, New Orleans, for defendants-appellees Mine Safety Appliances Co. and Avondale Industries.
Before KLIEBERT, C.J., and GAUDIN and DUFRESNE, JJ.
*802 KLIEBERT, Chief Judge.
This is an appeal in a tort suit arising out of the work-related silicosis of David Richardson, Sr., who died of lung cancer in 1982. The plaintiffs, David Richardson, Jr. and Linda Richardson Johnson, are the decedent's children. They appeal a judgment that granted an exception of prescription and dismissed their La.C.C. Art. 2315[1] survival action for damages suffered by their father as a result of the lung disease contracted during his 38-year employment with Avondale Shipyards, Inc. The plaintiffs' wrongful death claim for their own damages arising out of their father's death is pending in the district court and is not at issue on this appeal.
Defendants in the suit are decedent's employer, Avondale Shipyards, Inc.; nine individuals alleged to be executive officers, directors, and supervisory personnel of Avondale; several manufacturers of industrial safety masks, including Mine Safety Appliances Company; and various insurance companies alleged to be insurers of these parties.
In their petition and amended petition, the plaintiffs alleged that David Richardson, Sr. was employed at Avondale Shipyards, Inc. in various positions from approximately 1940 through March 1982; that in all jobs he was exposed to dangerously high levels of toxic fibers, asbestos, silica dusts and other inherently dangerous materials and irritants in the normal course of his work; and that, as a result of continued exposure to the toxic dust and fibers, the decedent contracted silicosis and other lung maladies that developed into lung cancer and respiratory failure, resulting in his death on April 2, 1982.
They alleged further that Avondale and its executive officers were or should have been aware of the danger to the decedent of lung disease related to fiber and dust exposure, but negligently and/or intentionally failed to advise him of the situation, thereby exposing him to continued harm and an aggravation of his condition. Plaintiffs asserted the defendant executive officers allowed the decedent to continue work as a sandblaster, although they knew the decedent suffered from chronic lung disease and sandblasting would be detrimental to his health. Specifically, they alleged the Avondale defendants failed to provide decedent with a safe working environment, failed to provide him with safe protective equipment, failed to maintain the protective equipment provided to him, failed to instruct him in proper use of the equipment, and allowed him to continue sandblasting and working in the high-density dust environment although they knew it would endanger his health.
In addition, they alleged that Avondale supplied safety masks to the decedent but these masks failed to protect him from exposure to the toxic dust and, therefore, the defendant manufacturers are liable for breach of warranty, improper and defective product design and manufacture, intentional misrepresentation of their products, failure to warn, and failure to provide proper instruction in use of the masks.
Finally, they alleged that Avondale's company doctors/medical officials or independent medical providers, who x-rayed the decedent in annual physicals over the years, negligently and/or intentionally failed to warn him of his lung maladies and the dangers inherent in his continuing to work in the dust-laden environment at Avondale, failed to advise him to seek proper medical treatment, and conspired with the Avondale defendants to withhold and suppress information concerning the health hazards of the dusts and fibers to which the decedent was exposed.
To establish their claim of prescription the defendants presented evidence in the form of medical records, depositions and affidavits. They argued that the decedent was diagnosed with silicosis in 1971, that as a result he was transferred from the position of chipper/grinder to crane operator to remove him from the sandblasting environment, and that he knew or had constructive *803 knowledge of the job-related nature of his illness since 1971, yet failed to take any legal action.
In opposition, the plaintiffs asserted that the decedent was seen by more than 10 physicians employed by Avondale from 1968 through 1982, but none informed him his lung disease was related to or in any way caused by his employment environment. Rather, the only cause alleged by these physicians was the decedent's cigarette smoking. In addition, they contend that his transfer to crane operator did not remove him from the dusty environment and, thus, the injuries he sustained continued without abatement until he ceased employment shortly before his death. Finally, the plaintiffs argue that the Avondale defendants never disclosed information regarding the harmful work environment to the defendant. Although the plaintiffs referred in their memorandum to depositions of doctors other than those whose depositions the defendants filed, the plaintiffs attached only isolated pages from those depositions to their memorandum.
In granting the exception, the trial judge stated:
Okay. Relative to the exception of prescription regarding the survivorship action, I believe that the decedent had knowledge of the injury as far back as 1971 and, also, it was proven to me he had it in '77, in '79. The suit was filed in 1982. I believe that the decedent also knew that it was caused by his work; and, therefore, the exception is granted.
On appeal the plaintiffs contend the trial court erred in finding the survival action prescribed, alleging the evidence showed the defendants engaged in "overt acts to conceal the true nature" and job-related cause of the decedent's condition and in failing to apply the continuing tort theory because "the deceased continued to work in the same harmful work environment until a few months prior to his death." They also assert the court erred in failing to grant them leave to amend their petition "to cure the defect," as provided by La.C.C.P. Art. 934. Finally, they contend the court erred in granting summary judgment because there were disputed issues of material fact.
First, we find no merit to the assignment of error regarding the summary judgment, because the trial court ruled only on the exception of prescription and made no mention of the defendants' alternative motion for summary judgment. In view of the granting of the exception, no ruling on summary judgment was necessary and none was made.
Thus, the issues before us are (1) whether the "continuing tort" doctrine applied to postpone the running of prescription; (2) whether the defendants proved that the decedent knew or had constructive knowledge of the employment-related nature of his disease more than one year prior to his death; and (3) whether the trial court should have permitted plaintiffs to amend their petition pursuant to La.C.C.P. Art. 934.
Delictual actions are subject to a liberative prescription of one year, which begins to run from the day the damage or injury is sustained. La.C.C. Art. 3492 (which contains the substance of and replaces former La.C.C. Arts. 3536(1) and 3537, repealed by Acts 1983, No. 173). In cases where the damage is not immediately apparent, however, "prescription begins to run from the time a reasonable person under similar circumstances would have become aware of both the tort and the damages." Wilson v. Hartzman, 373 So.2d 204, 206 (4th Cir. 1979), writ denied, 376 So.2d 961. In addition, where "the tortious conduct that is the operating cause of the damages is a continuing act, giving rise to successive damages from day to day ... prescription does not commence to run until the continuing cause of the damages is abated." Id.
Where the person who has been injured dies, the right to recover damages for the injury suffered by the deceased survives for one year from his death and is inherited by the beneficiaries listed in La.C.C. art. 2315.1. Where the right prescribed prior to the deceased's death, however, it cannot be inherited because it does not exist. See Dunn v. North Community Hosp., 545 *804 So.2d 1267 (2nd Cir.1989), writ denied, 550 So.2d 633.
This Court has previously ruled that "where a progressive occupational disease, such as silicosis, is involved, prescription begins to run when the disease has manifested itself and the victim is aware of it.... [I]n tort only manifestation and awareness is necessary because it is not necessary for the disease to result in a disability before it is a compensable injury." Watkins v. J. Ray McDermott, Inc., 466 So.2d 636, 637 (5th Cir.1985).
The injured party need not have actual knowledge of the condition as long as there is constructive notice, that is, information sufficient to incite curiosity, excite attention, or to put a reasonable person on guard to call for inquiry. Clofer v. Celotex Corp., 528 So.2d 1074 (5th Cir.1988).
Dr. Melvyn Kossover, the decedent's primary treating physician, testified by deposition that Richardson was admitted to Touro hospital in October 1971 for evaluation due to unexplained weight loss. Chest x-rays showed interstitial fibrosis, a chronic abnormality of the lungs that could be related to numerous things. Dr. Kossover stated he had discussed his findings with the patient. Due to the 20-year time lapse he could not recall the content of the discussion, except that it basically related to Richardson's smoking.
By the following month, November 1971, the doctor had concluded Richardson had chronic lung disease, probably silicosis. He admitted his notes did not specifically state he advised the patient of his diagnosis and of the probable cause but, asked whether he discussed these matters with the patient, the doctor stated he "would think that he did" because it was his procedure to do so. Dr. Kossover also thought he would have advised him to wear a mask for protection.
In October 1979 Richardson was hospitalized again for unexplained weight loss, at which time he was evaluated by Doctors Herbert and Garg, pulmonary specialists. Dr. Kossover's diagnosis again was pulmonary fibrosis with probable silicosis. He stated he informed the patient that he had silicosis because it was his practice to do so. Asked whether he discussed with him the relationship of the disease to the exposure to silica dust in his employment, the doctor replied, "I would imagine so. I don't know. * * * I am sure I stressed more his smoking history than the exposure."
In October 1981 Richardson was hospitalized again, at which time his lung cancer was diagnosed. He died on April 2, 1982. Dr. Kossover stated that during his 14-year treatment of the patient he did "not really" find reason to suspect the silicosis was progressing; rather, the doctor "had the feeling almost from the beginning that he may well have had a lung malignancy," although they were not able to diagnose it earlier. The possibility of cancer rather than occupational disease was Dr. Kossover's main concern and emphasis.
Dr. Om Garg, a specialist in pulmonary diseases who examined Richardson in 1979 on referral from Dr. Kossover, also testified by deposition. Dr. Garg stated that Richardson told him he had been diagnosed in 1971 as suffering from silicosis. Richardson also said he had worked as a grinder for about 25 years, where he was exposed to dust, and later he worked on cranes. Dr. Garg and his associate, Dr. Herbert, performed pulmonary function studies that confirmed the diagnosis of silicosis.
Drs. Garg and Herbert were again consulted by Dr. Kossover in 1981, at which time pathology tests indicated Richardson had lung cancer in addition to silicosis. Dr. Garg attributed the cancer to the decedent's long history of cigarette smoking, as did Dr. Kossover. Dr. Garg noted, however, that there are reports of recent medical studies that indicate silicosis may be associated with lung cancer. He had not read these reports at the time of his deposition because they had just been furnished to him by his associate, Dr. Herbert.
Plaintiff David Richardson, Jr., the decedent's son, testified in his deposition that he became aware in 1971 that something was wrong with his father and that his *805 father told him "he had something in his throat that come through his nostrils from where he worked at. * * * [H]e said he thought he got something from work from where he worked at up his nose."
Considering this evidence, we find no manifest error in the trial judge's finding that the decedent became aware he had a work-related illness in 1971 and, at latest, he knew by 1979. Richardson, therefore, had actual and constructive notice of his injury more than one year before his death in 1982.
Further, we find the plaintiffs presented insufficient evidence that either the Avondale defendants or other doctors who examined Richardson deliberately tried to conceal the work-related nature of his condition.
The record also establishes that the decedent was transferred from the position of chipper/grinder to the position of crane operator in 1972. The defendants assert the transfer removed him from the sandblasting environment, thus, from further exposure to silica. The plaintiffs, however, argue there is no proof the transfer removed him from a dusty environment and therefore prescription did not begin to run until Richardson stopped working in 1982. They refer to the testimony of David Richardson, Jr. that his father came home from work every day covered with dust.
We find, however, the testimony to which plaintiffs refer is not clear and is insufficient to rebut the other evidence that the job shift took Richardson out of the dusty environment. The record also contains letters to Richardson's employer from Dr. T.S. Dunn, Jr., who evaluated Richardson in December 1971, at which time he noted a pulmonary abnormality and recommended Richardson be removed from sand-blasting operations and be placed in a clean environment. In June 1973 Dr. Dunn reported he had examined Richardson again and "Mr. Richardson states he ... has been for quite some time employed in the capacity of crane operator and removed from areas of pulmonary hazard."
Finally, we find no merit to the plaintiffs' contention they should be allowed to amend their petition to "cure the defect." They have failed to establish that an amendment could cure the defect. See Riverwood Ltd. Partnership v. Randazzo, 552 So.2d 1289 (5th Cir.1989).
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the plaintiffs.
AFFIRMED.
NOTES
[1] The provisions for survival actions are now contained in La.C.C. Art. 2315.1, pursuant to Acts 1986, No. 211, and Acts 1987, No. 675.