865 So.2d 49 (2004)
Willard A. EASTIN, Jr., et al.
v.
ENTERGY CORPORATION, et al.
No. 2003-C-1030.
Supreme Court of Louisiana.
February 6, 2004.
*51 Maria N. Alessandra, Kim M. Boyle, Joanne P. Rinardo, Louis L. Galvis, Phelp & Dunbar, New Orleans; Keith M. Pyburn, Jr., Fisher & Phillips, New Orleans, Counsel for Applicant.
Linda S. Harang, New Orleans, and Thomas G. Wilkinson, Robert P. Early, Sr., Wilkinson & Grefer, Gretna; Stephen B. Murray, Robert J. Diliberto, Murray Law Firm, New Orleans, Counsel for Respondent.
TRAYLOR, Justice.
The plaintiffs relevant to this appeal (Eleven Plaintiffs), who were all between the ages of forty and seventy when terminated by the defendant companies, filed an age discrimination suit under the Louisiana Age Discrimination Employment Act (LADEA). Defendants filed an Exception of Prescription arguing each of the Eleven Plaintiffs were terminated more than one year before suit was filed. The trial court granted defendants' Exception of Prescription as to these plaintiffs. Plaintiffs appealed and the court of appeal reversed the trial court judgment based upon the doctrine of contra non valentem. 02-1119 (La.App. 5 Cir. 3/11/03), 844 So.2d 144. We granted defendants' writ to determine whether the claims of these Eleven Plaintiffs have prescribed.

FACTS AND PROCEDURAL HISTORY
On November 29, 1993, plaintiffs filed a petition for damages, declaratory relief, and sought class action status in the 24th Judicial District Court for the Parish of Jefferson under the LADEA. From January 1994 through April 24, 2000, plaintiffs filed seven subsequent supplemental and amending petitions, adding approximately two hundred additional plaintiffs to the suit.[1] Pursuant to an order by the trial *52 court, on May 31, 2001, plaintiffs filed their eighth supplemental and amending petition, to which defendants excepted on numerous grounds, including prescription, as to the claims of the Eleven Plaintiffs.
The trial court conducted a hearing on September 20, 2001. Finding that the Eighth Supplemental Petition contained "no allegation as to when each of those eleven plaintiffs knew, or reasonably should have known, of their claim." The trial court granted defendants' Exception of Prescription and ordered the plaintiffs "to amend their Petition to provide when each of the eleven plaintiffs' (sic) knew of their claim."
On October 23, 2001, plaintiffs filed their Ninth Supplemental and Amending Petition alleging for the first time when they suspected their severance were age-based.[2] *53 Defendants once again urged their Exception of Prescription as to the Eleven Plaintiffs. After hearing oral arguments on the prescription issue on August 21, 2001, the trial court granted defendants' Exception of Prescription and dismissed with prejudice the claims of the Eleven Plaintiffs by Partial Final Judgment on October 31, 2002. Plaintiffs appealed and the court of appeal reversed the trial court judgment based upon the doctrine of contra non valentem. We granted defendants' writ to determine whether the claims of these Eleven Plaintiffs have prescribed.

DISCUSSION

Prescription Issue
A cause of action based on age discrimination is a delictual action subject to a one year prescriptive period which commences the day the injury or damage is sustained. La. Civ.Code Ann. art. 3492. Under the two seminal United States Supreme Court cases, Chardon v. Fernandez, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) and Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and their progeny, it is well settled that the damage is sustained *54 in any employment discrimination case at the earlier of the date the employee is informed of his termination or his actual separation from employment. Chardon, 454 U.S. at 8, 102 S.Ct. 28; Ricks, 449 U.S. at 258, 101 S.Ct. 498; Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023, 1025 (11th Cir.1994); Williams v. Conoco, Inc., 860 F.2d 1306 (5th Cir.1988); Merrill v. Southern Methodist Univ., 806 F.2d 600 (5th Cir.1986); Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746 (1st Cir.1994); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir.1992); Winbush v. Normal Life of Louisiana, 599 So.2d 489, 491 (La.App. 3 Cir.1992). These courts have correctly reasoned that the discriminatory act and, hence, the damages occur upon the employee's first notice of the adverse employment action. Ricks, 449 U.S. at 258, 101 S.Ct. 498.[3]
In both Ricks and Chardon, the United States Supreme Court determined that suits brought more than one year from the date of notice of the termination are time barred as "the proper focus is on the time of the discriminatory act not the point at which the consequences of the act become painful." Ricks, 449 U.S. at 258, 101 S.Ct. 498; Chardon, 454 U.S. at 8, 102 S.Ct. 28. Therefore, under the Ricks/Chardon analysis, prescription begins to run when the termination decision has been made and conveyed to the employee, even if the employment does not cease until a future date. Id.
For the above reasons, we adopt the Ricks/Chardon rule that the plaintiff sustains damage in a non-continuing discrimination case when the discriminatory decision is made and communicated to the employee. Consequently, in the instant case, the prescriptive period of one year began to run for each of the Eleven Plaintiffs on the dates each of them were notified of their respective terminations. Therefore, the claims of all Eleven Plaintiffs are prescribed on the face of the petition as they each waited more than one year from the date the allegedly discriminatory decisions were made and communicated to them before joining the suit.
When an exception of prescription is filed, ordinarily, the burden of proof is on the party pleading prescription. Lima v. Schmidt, 595 So.2d 624, 628 (La.1992). However, if prescription is evident on the face of the pleadings, as it is in the instant case, the burden shifts to the plaintiff to show the action has not prescribed. Id.; Younger v. Marshall Ind., Inc., 618 So.2d 866, 869 (La.1993); Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383 (La.1993). Barring any tolling, the Eleven Plaintiff's claims are prescribed.
Plaintiffs argue that they could not know of the discrimination until they knew of the defendants' illegal motives, or the "animus," behind their terminations. In Morris, 27 F.3d 746, the plaintiff made the same argument and the Morris court rejected this contention, stating:
The rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period begins to run when the employee learns of the *55 adverse employment action). Thus, the key question to be answered here is temporal: at what juncture did appellant reliably know of the injury to which this lawsuit relates?
* * *
[T]he point in time at which the consequences of the act become hardest to bearwhich may or may not coincide with the occurrence of the act itself has no relevance for purposes of framing the limitations period ... [Plaintiff's argument] rests on the notion that appellant's claim did not accrue until he knew of both the suspension and the defendants' discriminatory animus. Stated a different way, [plaintiff] contends that his cause of action existed in what amounts to a state of suspended animation until he became aware of the ... motives behind the adverse employment decision. We cannot countenance this contention.
It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee. This rule of law is grounded on a solid foundation: when an employee knows that he has been hurt and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose. And the plaintiff need not know all the facts that support his claim in order for countdown to commence.
27 F.3d at 749-51(Parenthetical information and emphasis in original, internal citations omitted). While this reasoning squarely addresses when prescription begins to run in the instant case, we recognize that the federal law does not provide a remedy which exactly replicates our doctrine of contra non valentem. Therefore, we now turn to a discussion of this doctrine under our jurisprudence.

Contra Non Valentem Issue
The doctrine of contra non valentem provides that prescription does not run against one who is ignorant of the facts upon which their cause of action is based and applies an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. State Bd. of Ethics v. Ourso, XXXX-XXXX (La.4/9/03), 842 So.2d 346; Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, 1298; Hebert v. Doctors Mem. Hosp., 486 So.2d 717, 723 (La.1986).
This court in Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211, recognized four limited situations where the doctrine applies to prevent the running of prescription. The only argument raised by the plaintiffs in this area relate to the fourth element, known as the "discovery rule" and provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Griffin v. Kinberger, 507 So.2d 821 (La. 1987); Lott v. Haley, 370 So.2d 521 (La. 1979). This standard is exceedingly stringent and should be applied only in exceptional circumstances.[4]
*56 Along this vein, the Eleven Plaintiffs urge that they were unaware of the facts upon which their cause of action could be based because they were not aware of an alleged "pattern" of discrimination and, therefore, had no way of knowing that they had a cause of action within one year of their terminations. However, a "pattern" of discrimination is not required in order for an aggrieved plaintiff to have knowledge of his cause of action for age discrimination. The correct standard does not revolve around the knowledge of others who have filed suit, but relates to the plaintiff's reasonableness.
As previously stated, the general rule is that prescription begins to run from the date the discriminatory act is decided and communicated to the employee. The Eleven Plaintiffs' request that this court uphold the court of appeal determination that contra non valentem applies to suspend prescription is simply untenable. Contra non valentem acts to suspend prescription where the action or inaction of the plaintiff is reasonable. Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La.1987). The Eleven Plaintiffs allege no facts which show that their delay in joining the suit is reasonable.
Plaintiffs may not simply sit on their hands and do nothing to investigate their termination and expect their actions to be deemed reasonable. Under the facts of the instant case, where the plaintiffs alleged absolutely no active role in determining if their terminations were for unlawful reasons and made no inquiry into the reasons for their terminations, the plaintiff's delay in filing suit was not reasonable and does not merit the application of the doctrine of contra non valentem. We find the trial court was correct in granting the defendants' Exception of Prescription because the petition was prescribed on its face and the plaintiffs further made no effort to rehabilitate their lacking petition at the hearing. Moreover, plaintiffs have alleged no facts which lead this court to believe that they were somehow prevented from filing their suits in a timely manner. Their delay can only be attributed to their own inaction.
We recognize a distinct difference between learing of a lawsuit, learing of others being terminated for age-related reasons, and the situation we have here, where the causes of action accrue at the termination and prescription immediately commences yet the aggrieved party does nothing for years to determine if they have a cause of action. It is important to note that the first two situations, learing of another's law suit or discriminatory practices occasioned upon another, do not give rise to one's own rights to or the knowledge that one has a cause of action. On the other hand, learning of one's own termination does give rise to the knowledge of a cause of action and starts the proverbial clock's ticking.
*57 We conclude that each of the Eleven Plaintiffs had knowledge of their causes of action upon the date of their respective terminations. In the instant case, the petitions of the plaintiffs prove that their terminations occurred more than one year before the suit was filed on November 29, 1993.[5] The inaction of the Eleven Plaintiffs' for over one year from this time caused each of their suits to prescribe upon the one-year anniversary of the earlier of their terminations or their notification thereof. We find that the Eleven Plaintiffs were in no way prohibited from filing suit or investigating the circumstances of their terminations to determine if they had a cause of action, yet failed to do so. Accordingly, we find no manifest error in the judgment of the trial court.
For the above reasons, we find the court of appeal erred in reversing the trial court's judgment granting defendant's Exception of Prescription under the doctrine of contra non valentem.

CONCLUSION
After a thorough review of the record and considering the arguments of the parties, we reverse the entire judgment of the court of appeal. For the preceding reasons, we reinstate the trial court judgment granting the defendants' Exception of Prescription and remand the case to the trial court for further proceedings.
CALOGERO, Chief Justice, concurs for the reasons assigned by KIMBALL, J.
KIMBALL, J., concurs and assigns reasons.
JOHNSON, VICTORY and KNOLL, JJ., concur in result.
KIMBALL, Justice, concurring in result only.
I agree with the result reached by the majority in this case; however, in my view, the majority correctly described Louisiana's doctrine of contra non valentem and then failed to apply it. The result seems to merely give lip service to the doctrine while effectuating a "tolling" of prescription from the date the employee is given notice of termination, which is the federal jurisprudential method.
As recognized by the majority, the doctrine of contra non valentem operates to stop prescription from running against one who is ignorant of the facts upon which his cause of action is based. Specifically, in this case, the doctrine operates to stop prescription from running until one discovers or should have discovered the facts upon which a cause of action for age discrimination is based. While a "pattern" of discrimination may not be required for an aggrieved plaintiff to have knowledge of a cause of action in age discrimination, I am not prepared to burden terminated individuals with investigating and alleging a cause of action within one year when an employer has given the individual seemingly valid reasons for termination. In my view, this renders Louisiana's doctrine of contra non valentem moot in discrimination cases. However, even if the doctrine were applied to the plaintiffs in this case, I recognize that they waited more than a year even after they "discovered" that their termination was a discriminatory act. Consequently, I concur in the result reached by the majority.
NOTES
[1] On August 13, 1997, the plaintiffs were granted class certification by the District Court. This Court subsequently reversed the class certification and remanded the case for further proceedings.
[2] The following is the supplemental information provided in the Ninth Supplemental and Amending Petition regarding the Eleven Plaintiffs, with parenthetical information regarding when each filed suit:

Ellen Blanchard: Ms. Blanchard first realized that she might have been terminated based on her age in late 1995, when she met an ex-coworker, who told her about the class action lawsuit and gave her the telephone number of his attorney ... [The attorney] explained to Ms. Blanchard that the suit was based on claims of age discrimination and that she was qualified to be included because she was 45 years old when she was terminated. (Ms. Blanchard was terminated July 13, 1991 and admits to knowing of the suit for over four years before joining it on July 19, 1999.)
James Boudreaux: Mr. Boudreaux first realized that he might have been terminated based on his age in mid-October 1997, when he heard on WWL 807 am radio that a class action lawsuit for age discrimination had been filed against Entergy. At about the same time, a neighbor who was an Entergy employee at the time also made Mr. Boudreaux aware of the suit. (Mr. Boudreaux was notified of his termination January 6, 1992 admits to knowing of the suit for nearly two and one half years before joining it on April 24, 2000.)
Robert Butler: Mr. Butler first realized that he might have been terminated based on his age in January 1993, [when he] noticed younger people being trained and hired for positions that he could have been trained to do. Entergy never offered or contacted Mr. Butler about the possibility of being rehired or retrained for these positions. (Mr. Butler was notified of his termination on June 30, 1992 and admits to knowing of a possible cause of action for six and one half years before filing suit on July 19, 1999.)
Andrew Ford: Mr. Ford first realized that he might have been terminated based on his age sometime in 1995. He was laid off in September 1991, but did not realize or have knowledge of other employees over the age of 40 who were being replaced by younger persons until sometime in 1995. (Mr. Ford was terminated in September of 1991 and admits to knowing of the suit for four years before filing suit on July 19, 1999.)
Robert Fugok: Mr. Fugok does not know when he first began to realize that his termination was based on his age. He heard that individual suits has [sic] been filed for age discrimination. He talked to Robert Braniff, who had already filed suit. From what Mr. Braniff told Mr. Fugok about his own and other situations, and from what he remembered from his own termination, and from his unsuccessful efforts to regain employment with Entergy, he then believed that he, too, was terminated based on his age. It was then that he contacted the Murray Firm to bring a claim. (Mr. Fugok was notified of his termination on October 31, 1991. There is no information in the record regarding the date he joined the suit.)
Joy Hughes: Ms. Hughes was told about her termination as part of a group. Many younger employees were transferred to other departments during a year of waiting. She was among the first to be terminated. Her last day of work was December 31, 1991. It was not until mid-1993, when she saw all of the changes being made in the company, that she realized she might have been terminated based on her age. (Ms. Hughes was terminated December 31, 1991 and admits to knowing of the suit for nearly six years before filing suit on July 19, 1999.)
William Lee: When Mr. Lee was terminated in September 1991, he was so busy trying to get a job that he did not think about why he may have been terminated. He did not realize that his age might have been a factor until well after November 1992, and perhaps much later than that. He first thought his ethnicity was the reason because almost all of his colleagues who are minorities were also laid off. (Mr. Lee was notified of termination his in September 1992 and admits to knowing of the suit for nearly six years before joining the instant suit on July 19, 1999.)
Theresa Luker: Ms. Luker was not aware that her termination might have been based on her age until she saw the August 15, 1997, article in the Times-Picayune reporting the certification of the case as a class action. This is when she first realized that her termination might have been based on her age. (Ms. Luker was notified of her termination October 14, 1992 and admits to knowing of the suit for nearly two years before joining the instant suit on July 19, 1999.)
Glenn Parsons: Mr. Parsons did not realize that his termination might have been based on his age until some time in the last week of January 1993 or the first week of February 1993, when he had a phone call from one of his former employees, Harold Stephens, who had just been terminated. Mr. Stephens told Mr. Parsons that a number of Entergy employees felt that they had been the victims of age discrimination in their terminations, and that they were discussing legal options. Until this phone call, all of Mr. Parson's efforts had been devoted to finding another job, and relocating to the Boston area. [In Mr. Parson's statement, he also says:] Until that time [the phone call], I was convinced that I had been terminated because of the merger ... I was not thinking about the ages of others being terminated ... Frankly, I was not worrying about what was going on in New Orleans regarding other former Entergy employees. (Mr. Parsons was notified of his termination on September 1, 1992 and admits to knowing of the suit for nearly two and one half years before filing suit on August 11, 1995.)
Carlos Savona: Mr. Savona first learned that his termination might be based on his age in November 1996, when he learned through an acquaintance who had also worked for LP & L that there was an age discrimination suit pending. Shortly after that, [in December of 1996] Mr. Savona contacted the Law Office of Thomas G. Wilkinson. Prior to 1996, there was no reason for him to believe that his termination was for any reason other than for staff reduction. (Mr. Savona was notified of his termination in June of 1991. There is no information contained in the record regarding the date that he joined the suit.)
Lewis Touna: Mr. Touna first became aware that his termination might have been based on his age in July 1993 from some former fellow workers and retirees [who] explained to him the pattern of termination that had taken place. It was at this time that he realized that he was among those who may have been terminated based on their age. (Mr. Touna was notified of his termination in June of 1991 and admits to knowing of his cause of action for nearly six years before filing suit on July 19, 1999.)
[3] Winbush is an exception to the rule founded by the Louisiana courts of appeal. The courts of appeal deviated from the correct reasoning employed in Winbush in 1995 and have continued to erroneously rule that the damage is sustained from termination rather than from notification. See Harris v. Home Sav. and Loan Ass'n, 95-223 (La.App. 3 Cir.1995), 663 So.2d 92; Brunett v. Department of Wildlife and Fisheries, 96 0535 (La.App. 1 Cir.1996), 685 So.2d 618. This line of reasoning is incorrect and we now reject these cases and those with similar holdings for the more appropriate Ricks/Chardon standard.
[4] We distinguish the instant case from those in which the doctrine has traditionally been applied: those cases involving medical malpractice actions (In Re: Medical Review Panel of Howard, 573 So.2d 472 (La.1991); Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211 [Prescriptive period did not commence until plaintiffs discovered the damage, the delict and their relationship, when disease was diagnosed]); long-latency diseases (Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524 (5 Cir.1995) [Plaintiff cannot learn of damages suffered until many years after exposure]; Cole v. Celotex, 620 So.2d 1154 (La.1993) [Damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support the accrual of the cause of action]; Watkins v. J. Ray McDermott, Inc., 466 So.2d 636 (La.App. 5 Cir.1985), Richardson, Jr. v. Avondale Shipyards, Inc., 600 So.2d 801 (La.App. 5 Cir.1992) [Where a progressive occupational disease is involved, prescription begins to run when the disease has manifested itself and the victim is aware of it]); or torts involving juveniles (Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206 [Doctrine of contra non valentem suspended running of prescription until parents of molested child learned about molestation]). None of these circumstances exist in this case and are easily distinguishable because the plaintiffs in those cases were prevented from knowing of their damages until some time after the action or inaction of the defendant, i.e. the damages manifested at a later date.
[5] Additionally, plaintiffs themselves establish that they filed suit more than one year after finding out about the class action suit or alleged acts of discrimination against others. Some of the plaintiffs waited as long as six and one half years before joining the suit.