977 So.2d 41 (2007)
Mark A. HERMAN
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 2007 CA 0548.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
*42 Christopher B. Siegrist, Patrick H. Yancey, Houma, LA, for Plaintiff/Appellant, Mark A. Herman.
G. Bruce Parkerson, Glenn S. Newbauer, New Orleans, LA, for Defendant/Appellee, The Times-Picayune, L.L.C.
Maurice Mathieu, Houma, LA, Pamela Richard, New Orleans, LA, for Defendant/Appellee, State Farm Mutual Automobile Insurance Company.
Herman Bastian, Jr., Thomas Barnett, New Orleans, LA, for Defendants/Appellees, AIG Insurance and John Ross.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
This is an appeal by the plaintiff, Mark A. Herman (Herman), from a judgment maintaining the peremptory exception raising the objection of prescription in favor of The Times-Picayune, L.L.C. (Times-Picayune) and its unnamed insurer, and dismissing the plaintiffs claim against them. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The plaintiff, Herman, was injured as a result of an accident that occurred on June 16, 2001,[1] between the motorcycle he was driving and a vehicle with an attached flatbed trailer being driven by J.H. Ross (Ross). It is undisputed that the accident was caused by Ross's negligence in failing to yield and pulling out into the path of Herman's motorcycle. Ross was insured by an automobile liability policy issued by AIG National Insurance; Company (AIG), with policy limits of $100,000.00 per person.
On June 14, 2002, Herman settled his claims against Ross and AIG and executed a release of any and all claims against them as well as "any and all other persons" for any damages arising out of said accident. To preserve his claims against his uninsured motorist carrier, Herman predicated his execution of the release on Ross providing a sworn affidavit attesting that he, Ross, had no other insurance coverage or other source of funds or assets to apply toward any damage owed to Herman as a result of the accident. Ross's affidavit was signed on June 13; Herman executed the release the next day, on June 14, 2002. Herman was unrepresented by *43 counsel during these settlement negotiations; rather, he relied on information provided and assurances made by the insurance adjuster and the tortfeasor.
On June 6, 2003, Herman, represented by counsel, filed a petition for damages against State Farm Mutual Automobile Insurance Company (State Farm), asserting his claims for excess damages arising out of the accident under his uninsured motorist policy with State Farm.[2] During the course of discovery in that suit, Ross was deposed, and it was revealed that he was employed by the Times-Picayune, and he may have been in the course and scope of that employment at the time of the accident.
Based on this information, on April 15, 2005, State Farm filed a supplemental answer to Herman's Petition, asserting that Ross was acting in the course and scope of his employment at the time of the accident; therefore, it would be entitled to full credit for the assessment and payment of any damages from the Times-Picayune and its automobile liability insurer. Herman responded with a First Supplemental and Amending. Petition, filed on May 31, 2005, adding as defendants Ross, AIG, the Times-Picayune, and ABC Insurance Company, for the then unknown insurer for the Times-Picayune. This supplemental petition alleged that Herman had settled with Ross and AIG based on an affidavit from Ross that there was no other insurance coverage for the accident at issue, giving rise to Herman's action against his UM insurer, State Farm. The petition also asserted facts that indicated, contrary to the affidavit, that Ross may have been in the course and scope of his employment at the time of the accident, which if proven, would trigger liability and coverage under the Times-Picayune's automobile insurance policy.
On November 14, 2005, the Times-Picayune filed a peremptory exception raising the objection of prescription on the grounds that Herman did not file suit against the original tortfeasor, Ross, or his employer, the Times-Picayune, within the one-year prescriptive period applicable; and, his suit filed against his UM insurer within the two-year applicable prescriptive period did not interrupt prescription against the Times-Picayune. The exception also raised the objection of res judicata on the grounds that the release executed by Herman releasing Ross, AIG, and "any and all other parties" operated in favor of the Times-Picayune, barring Herman's claims against it. On April 26, 2006, two days before the hearing set on the Times-Picayune's exceptions, Ross and AIG filed their own exceptions of prescription and res judicata adopting and asserting, by way of incorporation, the arguments made by the Times-Picayune in support thereof.
On February 10, 2006, the Times-Picayune additionally filed a motion for summary judgment asserting that the uncontested facts established that Ross was not acting in the course and scope of his employment at the time of the accident, that there were no genuine issues of material fact, and that it was entitled to judgment as a matter of law. The Times-Picayune requested the motion for summary judgment be heard in conjunction with its previously filed exceptions.
On March 10, 2006, State Farm filed a cross motion for summary judgment, asserting that Ross was acting in the course *44 and scope of his employment at the time of the accident, that there were no genuine issues of material fact, and that it was entitled to judgment as a matter of law. The cross motion was set for hearing on the same date as the earlier filed exceptions and motion for summary judgment on behalf of the Times-Picayune.
On March 15, 2006, Herman filed a memorandum in opposition to the Times-Picayune's exceptions of prescription and res judicata. Regarding the exception of prescription, Herman claims entitlement to the contra non valentem suspension of the one-year prescriptive period, in particular the fourth category recognized by our jurisprudence: where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Herman claimed that he executed a release predicated on assurances by Ross (and AIG's insurance adjuster, Karen Delhardt) that there was no other insurance coverage for his damages. He further asserted that his reliance on Ross's affidavit to that effect was reasonable, and that the possibility of coverage through Ross's employer was a cause of action not known, nor reasonably knowable to him, based on the affidavit by Ross declaring that none existed. According to Herman, "Ross'[s] sworn affidavit should be reason enough for anyone to foreclose further investigation as to whether TP or anyone else was potentially liable: for Herman's damages." Notably, Herman cites no authority for this conclusive assertion.
A hearing on the exceptions filed by the Times-Picayune, Ross, and AIG, as well as on the Times-Picayune's summary judgment motion and State Farm's cross motion for summary judgment, was held on April 28, 2006. On May 11, 2006, the trial court rendered judgment maintaining the exception of prescription filed by the Times-Picayune and dismissing the plaintiff's claims against it. The trial court further found there was no just reason for delay and designated the judgment as final for purposes of appeal pursuant to La. C.C.P. art. 1915(B)(1). On May 15, 2006, the trial court rendered judgment denying both the motion and cross motion for summary judgment, finding genuine issues of material fact remain concerning whether Ross was acting in the course and scope of his employment at the time of the accident. And on May 22, 2006, the trial court rendered judgment denying the exceptions of prescription and res judicata filed by Ross and AIG.[3]
On June 5, 2006, Herman filed a motion for new trial on the Times-Picayune's exception of prescription, which was denied by the trial court on July 20, 2006. This appeal of that judgment by Herman followed.

CONTRA NON VALENTEM
Herman assigns error to the trial court's failure to apply the fourth factor of contra non valentem to excuse the running of prescription against Herman and in finding his claims against the Times-Picayune and its insurer prescribed. Herman asserts that prescription did not begin to run on his potential claims against the Times-Picayune pursuant to the fourth jurisprudential factor allowing the application of the doctrine, known as the; "discovery rule": "where the cause of action is not known or reasonably knowable to the plaintiff, even though his ignorance is not *45 induced by the defendant." In support of the application of contra non valentem, Herman asserts that it was reasonable of him to rely on the information provided and representations made to him by both Ross, the original tortfeasor, and the AIG claims adjuster, to the effect that there was no other source of insurance coverage available to Ross. Based on his reliance on the affidavit, Herman asserts it was not known or knowable to him that Ross may have been in the course and scope of employment at the time of the accident and that there may be other insurers against which to proceed. According to Herman, the information regarding the possibility of insurance coverage through Ross's employer was not known to him until certain facts were disclosed during Ross's deposition taken as part of discovery in his suit against State Farm. For the following reasons, we must reject this argument because under the particular facts and circumstances of this case, and the applicable jurisprudence, it has no merit.
The doctrine of contra non valentem is exceedingly stringent and applies only in "exceptional circumstances." La. C.C. art. 3467, Official Revision Comment (d); Eastin v. Entergy Corporation, 03-1030, p. 7 (La.2/6/04), 865 So.2d 49, 55; Renfroe v. State ex rel. Dept. of Transportation and Development, 01-1646, p. 9 (La.2/26/02), 809 So.2d 947, 953. Moreover, the doctrine will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned. Id., citing Corsey v. State of Louisiana, Through the Department of Corrections, 375 So.2d 1319, 1322 (La. 1979).

APPLICABLE JURISPRUDENCE
In Renfroe, the plaintiff filed a wrongful death suit against DOTD arising out of an accident resulting in his wife's death, which occurred on Causeway Boulevard. Plaintiff sued DOTD as defendant based on signs along parts of the Causeway Boulevard designating it as a state highway (LA 3046), and also because the accident was investigated by the State Police. However, it was discovered in a Motion for Summary Judgment filed by DOTD, that it was not the proper owner or responsible party for any alleged defects in the portion of the roadway where the accident occurred. The plaintiff responded with a supplemental and amending petition naming as defendants the proper owners of the portion of Causeway Boulevard where the accident occurred, Road District No. 1 (of the Parish of Jefferson) and the Greater New Orleans Expressway Commission (GNOEC). The trial court denied the newly named defendants' exception of prescription, and the court of appeal affirmed. The Supreme Court reversed, rejecting the plaintiffs assertion of contra non valentem, finding that plaintiff did not exercise the requisite reasonable diligence in ascertaining the identity of the proper owners of the roadway at issue. The Court simply stated, "[w]hile it is indeed unusual that different unrelated parties would own and maintain different portions of one roadway, the fact that the portion of the roadway was owned by some party other [than] the DOTD was `reasonably knowable' by the plaintiff within the prescriptive period." Renfroe, 01-1646 at p. 10, 809 So.2d at 954. Implicit in the Court's holding is a finding that the plaintiffs reliance on the roadway signs indicating state ownership and the fact that the accident was investigated by the State Police did not meet the requisite due diligence required of plaintiffs in filing suit timely against the proper defendants.
*46 Two other cases in our jurisprudence are particularly instructive because of the similarity of facts and circumstances under which the applicability of the contra non valentem doctrine was analyzed. The case of Bell v. Kreider, 03-300 (La.App. 5th Cir.9/16/03), 858 So.2d 58, writ denied, 03-2875 (La.1/9/04), 862 So.2d 986, involved an automobile accident that also occurred on the Greater New Orleans Expressway, more commonly known as the "causeway bridge," on which traffic had been restricted to the right hand lane of travel due to foggy weather conditions. Notwithstanding the closure of the left hand lane, New Orleans police officer Karl M. Kreider, who was off-duty and driving a privately owned vehicle, had requested and received permission from a GNOEC policeman, Officer Brock, to use the left lane of travel. The accident occurred between plaintiffs' vehicle and Officer Kreider's vehicle in the left hand lane when the plaintiffs attempted to veer into the emergency crossover to the left hand lane because of malfunctioning windshield wipers. Plaintiffs filed suit for their damages originally naming as defendants Kreider, Desiree Gaudet, the owner of the vehicle being driven by Kreider, and the insurer of that vehicle, Allstate Insurance Company. Almost four years after the original petitions were filed, the plaintiffs amended to name as additional defendants the GNOEC, its director, and Officer Brock. Exceptions of prescription filed by both GNOEC and Officer Brock were sustained. The plaintiffs appealed urging the application of the discovery rule of contra non valentem. As in the case before us, the plaintiffs in Bell claimed that they were unaware of the possibility of claims against the GNOEC and Officer Brock until facts suggesting their potential liability and potential causes of action were revealed in a deposition of Sgt. Mike Viola, the ranking supervisor with the GNOEC on the date of the accident. The plaintiffs claimed that prescription was suspended until Sgt. Viola's deposition made them aware of potential causes of action against GNOEC and Officer Brock.
The court rejected plaintiffs' claims and found the discovery rule of the contra non valentem doctrine inapplicable. Noting that the plaintiffs could have themselves deposed Sgt. Viola prior to the running of prescription, the court held:
[W]e find that plaintiffs in this case failed to use reasonable diligence in pursuing possible claims against Officer Brock and the GNOEC. Nothing in the record suggests that plaintiffs were unduly prevented from obtaining and verifying information as to the GNOEC policies and procedures. Nothing in the record suggests that plaintiffs [were] prevented from investigating whether Officer John Brock had violated said policies and procedures in permitting an off duty police officer to drive a privately owned vehicle in the restricted lane of travel.
Bell 03-300, at pp. 7-8, 858 So.2d at 62-63. The court relied on its earlier decision in Drake v. Sarpy Properties, Inc., 01-1323 (La.App. 5th Cir.4/10/02),10 817 So.2d 209, writ denied, 02-1339 (La.9/13/02), 824 So.2d 1170, the other case we have found that is most similar to the facts and circumstances presented in this appeal, in which the court held that reliance on misinformation, standing alone, does not satisfy the reasonable due diligence requirement for the application of the discovery rule of contra non valentem.
In Drake, the plaintiff sustained injuries when he stepped into a hole in a shopping center parking lot. He retained counsel who contacted the Jefferson Parish Assessor's Office by telephone to obtain the identity of the owner of the shopping center. Erroneous information was provided *47 to plaintiff's counsel by the Assessor's Office, and as a result, the plaintiff sued the wrong property owner. In opposition to the exception of prescription filed by the correct property owner, who was named a defendant by amending petition filed more than one year after the accident, the plaintiff claimed that it was reasonable to rely on the information provided by the Assessor's office, and that this exercise of due diligence was sufficient to invoke the fourth category of the contra non valentem doctrine. The court: rejected the plaintiffs argument, finding that due diligence was not exercised in obtaining the true identity of the defendant, which as noted by the court, notwithstanding the incorrect information provided by the public servant, was information that was readily available and could have been confirmed or verified by the plaintiff by simply obtaining a written record from the Assessor's office. Drake, 01-1323 at pp. 7-8, 817 So.2d at 213.

ANALYSIS
In the present case, as in Drake, the plaintiff, Herman, relied on misinformation in determining the parties against whom he had a cause of action for damages sustained in the accident. In this case, unlike Drake, the information was not provided by a third-party agency that retains and provides such information to the public, but was provided to Herman by the tortfeasor, Ross, and the insurance adjuster for Ross's insurer. We question outright the diligence exercised in relying on information provided by a tortfeasor and his insurer, as they can be considered one's "adversaries" when liability is alleged and damages are claimed. However, we need not stop there in our analysis in assessing Herman's diligence in flatly relying on Ross's statement that no other insurance coverage was available. The record reveals that at no time did Herman inquire whether Ross was employed and by whom. While we believe this inquiry is not too onerous to expect of a layperson, especially an educated plaintiff like Herman, a chiropractor, we again need not rest our analysis on this fact alone. In this case, the record also reveals that at the time of the accident, Ross was driving a vehicle pulling a flatbed trailer on which a Times-Picayune newspaper vending machine was clearly visible. Indeed, Herman admitted in his deposition that he saw the vehicle, the trailer and the Times-Picayune vending machine both prior to and after the accident.
We find these circumstances sufficient to incite reasonable inquiry from the average layperson regarding the employment status of the tortfeasor. Indeed, we can think of no other reason a person would be driving around visibly transporting a Times-Picayune machine without having some connexity with the Times-Picayune. At the very least, these facts are sufficient to reasonably incite such inquiry about Ross's employment, particularly in consideration of potential liability and coverage for damages and injuries sustained in the accident.
Finally, we note that the release executed by Herman, after obtaining the affidavit from Ross, contains express language releasing "any other party or parties" who may be liable, language we believe is also sufficient to put him on notice that other parties may indeed be liable and that further investigation is warranted for the exercise of reasonable due diligence.
Given all these facts and circumstances, and considering similar jurisprudence, we find the trial court did not err in sustaining the exception of prescription and implicitly rejecting plaintiff's assertion of the discovery rule exception of contra non valentem.

*48 INTERRUPTION OF PRESCRIPTION
Herman also asserts that the trial court erred in sustaining the exception of prescription, while at the same time finding a genuine issue of material fact regarding whether Ross was in the course and scope of his employment with the Times-Picayune at the time of the accident. According; to Herman, if Ross is later determined to have been acting in the course and scope of his employment with the Times-Picayune, this would give rise to solidary liability between Ross and the Times-Picayune, rendering the running of prescription against the Times-Picayune interrupted. While the plaintiff correctly asserts the potential solidarity that may subsequently exist in this matter, its claim that this fact alone serves to interrupt prescription against the Times-Picayune has no merit under the circumstances of this case. The faultiness in plaintiff's argument lies in his failure to recognize that no suit was filed against any of the original tortfeasors, including Ross, within the one-year prescriptive period applicable to those claims. Herman's suit was filed almost two years after the accident. While Herman's suit was timely filed against a UM insurer pursuant to the two-year prescriptive period provided in La. R.S. 9:5629, no action was filed within the one-year prescriptive period applicable to any other tortfeasor or liable party.
Our supreme court has held that an otherwise timely action against one solidary obligor cannot revive an action already extinguished by prescription. In Rizer v. American Surety and Fidelity Ins. Co., 95-1200 (La.3/8/96), 669 So.2d 387, the Court held:
Once prescription extinguishes a cause of action, a subsequent timely suit against a solidary obligor cannot revive the already prescribed action. "Once prescription occurs, it cannot be interrupted. Timely suit against one solidary obligor does not interrupt prescription that has run against another solidary obligor."
Rizer, 95-1200 at p. 6, 669 So.2d at 390-91 (citations omitted).
In this case, Herman is relying on his action against Ross and AIG to interrupt prescription against the Times-Picayune, a solidary obligor if Ross is found to have been in the course and scope of his employment. This argument fails because there was no tort action asserted against Ross and AIG within the one-year prescriptive period. In fact, there has never been a tort action filed against Ross and AIG. That claim was settled. The; amended petition adding Ross and AIG as defendants is an action against them to annul the release executed by Herman on the basis of alleged error or misrepresentation. This is not the obligation for which the Times-Picayune would allegedly be solidarily liable. Therefore, even if that action was timely filed against Ross and AIG, it is not the action that would interrupt prescription against the Times-Picayune. The action that may have interrupted prescription against the Times-Picayune would have to be a tort action for damages arising out of the same facts and circumstances upon which Herman claims a suspension of prescription, and it would have to have been filed within one year from the date of the accident. The record reveals that neither was done. Accordingly, this argument lacks merit.

CONCLUSION
For all the foregoing reasons, we find the trial court did not err in maintaining the Exception of Prescription in favor of the Times-Picayune and dismissing the plaintiffs action against it. Accordingly, that judgment is affirmed. Plaintiff, Mark *49 Herman, is assessed all costs of this appeal.
AFFIRMED.
WHIPPLE, J., concurs for reasons assigned.
WHIPPLE, J., concurring.
I disagree with the majority's statement that a plaintiff who goes to the trouble of obtaining a sworn affidavit is not entitled to rely on that affidavit or that any error in such is wholly chargeable to the plaintiff and operates solely to his detriment. Pretermitting whether Ross or his adjuster misled plaintiff herein, I agree that the plaintiffs admission that he saw the vending machine being transported precludes the application of the doctrine of contra non valentem against the Times-Picayune.
Moreover, although I must reluctantly agree with the ultimate result reached herein vis-a-vis any claims by plaintiff against the Times-Picayune, I disagree with the majority's reliance upon the boiler-plate language found in the release (prepared by AIG) as somehow providing notice to plaintiff that others were or could be liable. As the majority correctly notes, our holding herein does not address any claims plaintiff may have for damages against Ross and AIG arising from the execution of the release.
NOTES
[1] The petition erroneously states the accident occurred on June 16, 2002; however, throughout the rest of the record, June 16, 2001, is established as the date of the accident.
[2] Although filed almost two years after the accident, this petition against State Farm, Herman's contractual UM insurer, was timely filed pursuant to the two-year prescriptive period applicable to actions brought under uninsured motorist provisions, pursuant to La. R.S. 9:5629.
[3] We note that the record also contains another separate but identical judgment denying those exceptions; however, this judgment is signed and dated May 30, 2006. Because that judgment has no effect or impact on this appeal, that inexplicable discrepancy in the record is inconsequential.