CRAIN, J.
| pGreat Southern Dredging, Inc. (Great Southern) appeals a decision of the Louisiana Ethics Adjudicatory Board (EAB) finding that it violated the Louisiana Code of Governmental Ethics (Ethics Code) by making payments to an entity that was prohibited from receiving the payments, and assessing it with a $10,000.00 penalty for the violation. We affirm.
FACTS AND PROCEDURAL HISTORY
In 2011, the Greater Lafourche Port Commission awarded Great Southern a *634 $1,6 million contract for the Flotation Canal Shoreline Protection Project. During the project, Great Southern subcontracted work to Larry Griffin Towing Company, Inc, (Griffin Towing), and paid Griffin Towing approximately $94,000.00 for services rendered. Additionally, Great Southern paid Griffin Towing approximately $194,000.00 for work unrelated to the Flotation Canal Shoreline Protection Project.
The Louisiana Board of Ethics (the Board) charged Griffin Towing with violating the Ethics Code by receiving the payments from Great Southern. The charge was based on the Board’s allegation that Larry Griffin was both an elected member of the Greater Lafourche Port Commission and owner of a greater than 25% interest in Griffin Towing. Griffin Towing had 100 shares of stock outstanding, and 51 shares were issued in the ñamé of Larry Griffin’s wife. Although Larry Griffin did not own Griffin Towing stock in his own name, the Board alleged that he owned a one-half interest in the 51 shares in community with his wife. Because of Larry Griffin’s ownership interest in Griffin Towing and his membership on the Greater Lafourche Port Commission, the Board alleged that the Ethics Code prohibited Griffin Towing from receiving payments from Great Southern, an entity with a contractual relationship with the Greater Lafourche Port Commission. Griffin |sTowing admitted to the charged violation and accepted a $20,000.00 penalty assessed to both Griffin Towing and Larry Griffin.
The Board separately charged Great Southern with violating the Ethics Code by making the prohibited payments to Griffin Towing. After considering the evidence presented at a public hearing, the EAB issued a written decision and order finding that the payments violated the Ethics Code because Larry Griffin’s ownership interest in Griffin Towing prohibited Griffin Towing from receiving the payments. The EAB then assessed a $10,000.00 penalty to Great Southern, the maximum penalty for the violation. Great Southern now appeals.
STANDARD OF REVIEW
The Louisiana Administrative Procedure Act (APA) governs judicial review of the EAB decisions. La. R.S. 42:1143; La. R.S. 49:950 et seq.; Board of Ethics In re Davies, 10-1339 (La.App. 1 Cir. 12/22/10), 55 So.3d 918, 920. Judicial review is confined to the record developed in the administrative proceedings, and the EAB’s decision may be reversed or modified only if substantial rights of the appellant are prejudiced because the findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency’s statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. La. R.S. 49:964 G. The reviewing court owes no deference to the legal findings of the EAB, rather, it reviews questions of law de novo then renders judgment on the record. See Ellis v. Louisiana Bd. of Ethics, 14-0112 (La.App. 1 Cir. 12/30/14), 168 So.3d 714, 720-21, writ denied, 15-0208 (La.4/17/15), 168 So.3d 400.
UETHICS CODE VIOLATION
The Ethics Code was enacted to establish ethical standards for the conduct of elected officials and state employees to protect against conflicts of interest between their private interests and the duties of their positions. La. R.S. 42:1101 B. To prohibit persons seeking to obtain or having governmental contracts or hav *635 ing interests substantially affected by the performance of certain governmental employees from attempting, through payments of something of economic value, to curry favor, gain preferential treatment, or be excused from substandard performance by reason of prohibited payment, Louisiana Revised Statutes 42:1111 C(2) prohibits public servants and entities they own or control from receiving certain payments. See IT Corp. v. Commission on Ethics for Public Employees, 453 So.2d 251, 258 (La.App. 1 Cir.1984), affirmed, 464 So.2d 284 (La.1985) (interpreting Louisiana Reviséd Statutes 42:1118, the predecessor to Section 42:1111).
Section 42:1111 C(2) provides:
(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service, unless such services are:
(a) Bona fide and actually performed by the public servant or by the entity;
(b) Not within the course of his official duties;
(c) Not prohibited by R.S. 42:1112 or by applicable laws or regulations governing nonpublic employment for such public servant; and
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) or (B) from receiving a gift.
|fiLouisiana Revised Statutes 42:1115, referenced in Section 42:1111 C(2), provides:
A. No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant’s agency, or
(2) Is seeking, for compensation, to influence the passage or defeat of legislation by the public servant’s agency.
B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public employee knows or reasonably should know that such person:
(1) Conducts operations or activities which are regulated by the public employee’s agency.
(2) Has substantial economic interests which may be substantially affected by the performance or nonperformance of the public employee’s official duty.
Sections 42:1111 C(2) and 42:1115 prohibit receipt of payments by the public servant and entities in which he exercises control or has the requisite ownership interest. Correlatively, Section 42:1117 of the Ethics Code prohibits a third party from making those payments to the public servant or entity, providing:
No public servant or other persont[1] shall give, pay, loan, transfer, or deliver or offer to give, pay, loan, transfer, or deliver, directly or indirectly, to any public servant or other person any thing of economic value which such public *636 servant or other person would be prohibited from receiving by any provision of this Part.
The Board alleged and the EAB found that Great Southern violated Section 42:1117 by making payments to Griffin Towing, when Section 42:1111 C(2) prohibited Griffin Towing from receiving the payments from Great Southern. It is | r,undisputed that as an elected member of the Greater Lafourche Port Commission, Larry Griffin was a “public servant” for purposes of the Ethics Code. See La. R.S. 42:1102 (defining a “public servant” as a public employee or elected official). It is also undisputed that Great Southern had a contractual relationship with Larry Griffin’s agency, the Greater Lafourche Port Commission, at the time of the allegedly prohibited payments. However, Great Southern contends that the EAB’s determination should be overturned because Larry Griffin did not own any interest in Griffin Towing. Specifically, Great Southern argues that the EAB’s conclusion that Larry Griffin owned a one-half interest in the 51 shares of stock issued in his wife’s name, by virtue of the community of ac-quets and gains between them, was erroneous.
The evidence presented at the hearing before the EAB establishes that at all relevant times, Larry Griffin was married to Myrna Griffin, and the two were subject to a community property regime. Griffin Towing was incorporated during the marriage, and initially 100 shares of stock were issued to Larry Griffin. In 2003, Larry Griffin transferred 51 shares of Griffin Towing stock to his wife and the remaining 49 shares to his son, and thereafter claimed no interest in Griffin Towing.
The community property comprises property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property. La. Civ.Code art. 2338. Property in the possession of a spouse during the existence of the community property regime is presumed to be community. La. CivjjCode art. 2340. Shares of stock are incorporeal movable property, and though stocks issued in the name of one spouse are subject to management by that spouse exclusively, stock in the possession of a spouse during the community property regime is presumed to be community property. See La. Civ.Code art. 2351 (“A spouse has the exclusive right to manage, alienate, encumber, or lease movables issued or registered in his name as provided by law”); Talbot v. Talbot, 03-0814 (La.12/12/03), 864 So.2d 590, 600-02 (where the court analyzed the evidence presented to determine if the wife met her burden of establishing the separate nature of certain stock).
Great Southern concedes that the Griffin. Towing stock is community property, but contends that Larry Griffin would become an owner in indivisión of a one-half interest in the community property only upon divorce. While correct that upon dissolution of the community property regime, each spouse is recognized as the owner of an undivided one-half interest in the community property (Cf. Monk v. Monk, 243 La. 429, 440, 144 So.2d 384, 388 (La.1962)), Great Southern’s argument ignores the express provision of Louisiana Civil Code article 2336, that during the existence of the community property regime, “[ejach spouse owns a present undivided one-half interest in the community *637 property.” (Emphasis added.) The comments to Article 2336 explain, “The community of acquets and gains is ... a patrimonial mass.... An undivided one-half of the mass forms a part of the patrimony of each spouse during the existence of the community property regime[.]” Pursuant to Article 2336, during the existence of the marriage, Larry Griffin and his wife are each owners of an undivided one-half interest in the 51 shares of Griffin Towing stock.
| sGreat Southern argues, however, that Larry Griffin is not the “legal owner” of the stock citing to the Louisiana Corporation Code, Louisiana Revised Statutes 12:601, which provides:
The person, firm, or corporation, in whose name a certificate representing shares of stock stands, or to whom a certificate is endorsed, whether in full or in blank, and who has possession of said certificate, shall be regarded as the legal owner. The legal owner has full power to pledge, sell or otherwise dispose of said stock. No person, corporation, firm or transfer agent shall be responsible to any one claiming any interest in, or ownership of, said shares, or any part thereof, by virtue of any undisclosed or latent legal or conventional title or interest therein.
Section 42:1111 C(2) specifies that its prohibition applies to companies in which the public servant “owns an interest in excess of twenty-five percent,” which Great Southern asserts could reasonably be interpreted to mean companies in which the public servant is the legal oimer of more than a 25% interest. Great Southern argues that this creates an ambiguity, and the rule of lenity requires that any doubt about the form of ownership contemplated by Section 42:1111 C(2) must be resolved in favor of Great Southern.
Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for legislative intent. In re Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128. The starting point for interpretation of any statute is the language of the statute itself, as the text of the law is the best evidence of legislative intent. See La. R.S. 24:177 B(1); Rando v. Anco Insulations, Inc., 08-1163 (La.5/22/09), 16 So.3d 1065, 1075. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9; La. R.S. 1:4; In re Clegg, 10-0323 (La.7/6/10), 41 So.3d 1141, 1154 (per curiam). Unequivocal provisions 13are not subject to judicial' construction and should be applied by giving words their generally, understood meaning. La. Civ.Code art. 11; La. R.S. 1:3; Boudreaux v. Louisiana Dept. of Public Safety and Corrections, 12-0239 (La.10/16/12), 101 So.3d 22, 26.
The provisions of the Ethics Code are penal in nature and must be strictly construed so as not to extend powers not authorized by the letter of the law, even if such powers are arguably within its spirit.[2] See Ellis, 168 So.3d at 725; Gibbs *638 Const. Co., Inc; v. State, Dept. of Labor, 540 So.2d 268, 269 (La.1989). The rule of lenity requires that any doubt as to the interpretation of a statute upon which an Ethics Code violation is based be-resolved in favor of the accused. Ellis, 168 So.3d at 725. However, the rule of lenity does not require “such unreasonable technicality as to defeat the purpose of all rule of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute.” State v. Shaw, 06-2467 (La.11/27/07), 969 So.2d 1233, 1242. Accordingly, we are bound to a strict interpretation of the plain language of Section 42:1111 C(2), with any doubt as to its interpretation resolved in favor of Great Southern.
11flSection 42:1111 C(2) specifies that its prohibitions apply to any company in which a public servant “owns an interest in- excess of twenty-five percent;” La. R.S. 42:1111 C(2) (emphasis added). Black’s Law Dictionary defines “own” as “[t]o have a good legal title; to hold as property; to have a legal or rightful title to; to have; to possess.” We find that the unrestricted term “owns” used in Section 42:1111 C(2) encompasses ownership by virtue of a community property regime. The term “owns” is not generally understood to be restricted to the legal ownership recognized by the Louisiana Corporation .Code. Legal ownership is distinguished from actual ownership, which may be determined from all the facts and circumstances of a case. In re Interdiction of Vicknair, 01-0902 (La.App. 1 Cir. 6/21/02), 822 So.2d 46, 50; Schexnayder v. Yolande Schexnayder & Son, Inc., 12-885 (La.App. 5 Cir. 5/23/13), 119 So.3d 624, 629. While legal ownership determines which spouse is afforded the rights and privileges of a stockholder, actual ownership - between spouses is determined -by Louisiana’s community property law. See Schexnayder, 119 So.3d at 629-30. The language of Section 42:1111 C(2) is unambiguous. Its application does not lead to absurd consequences. Therefore, we apply it as written. Griffin Towing is a legal entity in which a public servant owns an interest in excess of 25% and was therefore prohibited from receiving the payments from Great Southern.
While our analysis does not allow any further interpretation in search of the intent of the legislature, we note that Great Southern’s interpretation of Section 42:1111 C(2) would-undermine the purpose of the Ethics Code, which is to establish ethical standards for the conduct of elected officials and state employees to protect against conflicts of interest between their private interests and the duties of their positions. See La. R.S..42:1101 B. Limiting the prohibitions of Section 42:1111 C(2) to companies in which the public official is the legal' owner under the Louisiana 111 Corporation Code would create a loophole whereby public officials could evade the provisions of the Ethics Code by simply placing corporate stock in their spouses’ names. This was surely not the intent of the legislature, and even the rule- of lenity does not support this construction.
Larry Griffin, a public servant, owned an undivided one-half interest in 51 of the 100 shares of Griffin Towing stock, or an *639 excess of 25% of the ownership interest in Griffin Towing. Great Southern paid Griffin Towing for services rendered at a time when Great Southern had a contractual relationship with Larry Griffin’s agency, the Greater Lafourche Port Commission. Those payments were prohibited by Section 42:1177. The EAB did not err in finding that Great Southern violated the Code of Ethics.
MOTION TO DISMISS
Prior to the public hearing before the EAB, Great Southern filed a motion to dismiss the charges against it on grounds that the Board did not conduct a properly noticed investigation of the alleged violation and did not properly authorize the charge. Great Southern argued that the Board gathered evidence against it during the Griffin Towing investigation and without notifying Great Southern that it was the subject of the investigation. After Great Southern was notified -that it was being investigated, Great Southern contends that no additional investigation took place. Consequently, Great Southern argued that it was investigated without notice. The Board argued that it did not •violate Great Southern’s due process rights, that it provided adequate notice to Great Southern prior to taking any action against Great Southern, and that it conducted a proper investigation in accordance with the provisions of the Ethics Code. The EAB denied Great Southern’s motion, finding that the Board followed its procedural processes and did not violate Great Southern’s |12rights or otherwise prejudice Great Southern. On appeal, Great Southern contends that the EAB erred as a matter of law and that .its decision should be overturned.
The record before us supports the EAB’s determination that Griffin Towing not Great Southern, was the target of the initial investigation. However, evidence gathered during the Griffin Towing investigation resulted in the Board voting to investigate violations by Great Southern. The Board then provided Great Southern with notice that it was being investigated. The Board did not file charges against Great Southern prior to providing the notice of investigation.
Great' Southern complains that there was no investigation after it received the investigation notice, asserting that this-establishes that the Board investigated it during the Griffin Towing investigation, prior to Great Southern being provided notice, and in violation of Louisiana Revised Statutes 42:1141 C(l), which requires that the Board provide the alleged violator written notification of the commencement of the investigation not less than ten days prior to the date set for the commencement of the investigation.
At the outset, we recognize that the Ethics Code specifícálly authorizes the Board to conduct a private investigation. See La. R.S. 42:1132 C, 42:1134C, 42:1141 C. The investigation is a means for the Board to gather the facts necessary to establish a factual basis for an alleged violation.. See Ellis, 168 So.3d at 725-26. During the course of that investigation, subpoenas and interrogatories may be issued to anyone with information regarding the matter being investigated, and the Board may require the respondent or witnesses to testify regarding the matter under oath. See La. R.S. 42:1141.4 B; Ellis, 168 So.3d at 726. However, the Ethics Code does not require that the Board utilize these tools or do anything other than complete its investigation so that it possesses a prima facie' case before filing formal charges. , See La. R.S. 42:1141 C; Ellis, 168 So.3d at 725. Notably, nothing in- the Ethics Code prohibits the Board from reviewing evidence already in its pos *640 session, properly obtained during an earlier investigation into another entity, to establish a prima facie case against a second entity.
Great Southern also complains that the Board “materially misrepresented” that the target of the first investigation was Griffin Towing, not Great Southern, which led Great Southern’s president to provide evidence that was subsequently used against Great Southern. At the public hearing before the EAB, Great Southern’s president testified that she was contacted by an investigator for the Board and told that they were investigating Griffin Towing, that she participated in a telephone conference, and thereafter learned that the Board was going to investigate Great Southern, but she was not aware of any investigation that took place after being so notified. In her affidavit submitted in support of the motion to dismiss, Great Southern’s president attested that she provided documents and made statements to the investigator regarding Great Southern’s business relationship with Griffin Towing, but was never informed that the information would be used as evidence against Great Southern.
The Ethics Code clearly outlines the impropriety of a company owned by a public servant receiving a payment from a company that has a contractual relationship with the public servant’s agency, as well as the impropriety of the company with the contractual relationship with the public servant’s agency making the payment to the company owned by the public servant. See La. R.S. 42:1111, 42:1115, 42:1117. No one may avail himself of ignorance of the law; therefore, Great Southern cannot claim the benefit of not realizing during its participation in the Griffin Towing investigation that if Griffin Towing violated the Ethics Code by |ureceiving payments from Great Southern, then Great Southern may have also violated the Ethics Code by making those payments. See La. Civ.Code art. 5; see also La. R.S. 42:1111, 42:1115, 42:1117. Great Southern has not alleged that it was offered any type of immunity in return for its participation in the Griffin Towing investigation, and Great Southern did not seek to exclude the evidence that it complains was obtained as a result of the Board’s alleged material misrepresentation. We note too that the Board did not introduce statements by Great Southern’s president as evidence against Great Southern. We find no merit in this argument.
Great Southern additionally argues that the charges should have been dismissed because only eight board members were present at the meeting during which the Board voted to file charges, while nine members are required to conduct the business of the Board sitting en banc. The EAB rejected this argument finding that the Board was not sitting en banc, therefore, the vote of nine members was not required.
Great Southern’s argument concerns the interpretation of Louisiana Revised Statutes 42:1141, entitled “Complaints and Investigations,” which pertinently provides:
A. (1) The Board of Ethics members may sit en banc or in panels in such order and at such times as the board directs.
(2) The Board of Ethics may authorize the hearing and determination of matters by separate panels, each consisting of not less than three members. Such panels shall sit at the times and places to hear matters assigned as the chairman directs. Such hearings shall be public except those provided for in Subsection C of this Section. All determinations of a panel shall be by a majority vote. However, if a panel consists of three members, all determinations of the *641 panel shall require a unanimous vote of the members of the panel. Each panel shall be vested with specific subject matter jurisdiction. The Board of Ethics may determine by rule a procedure to rotate members among different subject matter panels to encourage the participation of each member of the board in, and the knowledge of each member of the board of, |ismatters concerning the different provisions of law under the jurisdiction of the board.
(3) Notwithstanding any other provision of this Chapter, the presence of nine members shall be required to conduct the business of the Board of Ethics sitting en banc.
(4) The Board of Ethics shall promulgate procedural and jurisdictional rules relative to the establishment of the several panels. The rules shall specify procedures wherein the chairman may refer matters to the appropriate panel with proper subject matter jurisdiction.
(5) The Board of Ethics by a majority vote of its membership, may review any opinion, decision, finding, or ruling of any panel.
[[Image here]]
C. (1) Upon receiving a sworn complaint or voting to consider a matter as provided in Subsection B of this Section, a private investigation shall be conducted to elicit evidence upon which the Board of Ethics shall determine whether a public hearing should be conducted or that a violation has not occurred. The accused and the complainant shall be given written notification of the commencement of the investigation not less than ten days prior to the date set for the commencement of the investigation. (2) After the investigation has been completed, the Board of Ethics shall determine whether a public hearing should be conducted to receive evidence and to determine whether any violation of any provision of law within its jurisdiction has occurred. If a violation has not occurred, the defendant and the complainant shall be notified within ten days of the ruling.
(3)(a) If the board determines following an investigation that a public hearing should be conducted, the board shall issue charges. A public hearing shall be conducted to receive evidence relative to the facts alleged in the charges and to determine whether any violation of any provision of law within the jurisdiction of the board has occurred. The public hearing on such charges shall be conducted by the Ethics Adjudicatory Board in accordance with the Administrative Procedure Act and this Part ...
[ (Footnote omitted.) ]
The starting point for interpreting a statute is the language of the statute itself, as the text of the law is the best evidence of legislative intent. See La. R.S. 24:177 B(l); Rando, 16 So.3d at 1075. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as 11 «written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9; La. R.S. 1:4; In re Clegg, 41 So.3d at 1154; Edwards v. Louisiana Farm Bureau Mut. Ins. Co., 15-0292 (La.App. 1 Cir. 9/18/15) 182 So.3d 992, writ denied, 15-1892 (La.11/20/15), 180 So.3d 1286.
Section 42:1141 C(3)(a) provides that the Board shall issue charges if it determines after an investigation that a public hearing should be conducted. Section 42:1141 A further provides that the Board may sit en banc or in panels, as the Board directs. The word “may” is permissive, not mandatory. La. R.S. 1:3; Nunez v. Pinnacle Homes, L.L.C., 15-0087 *642 (La.10/14/15), 180 So.3d 285, 289. Thus, the Board is permitted, but not required, to sit en bane or in panels. If it is not sitting en banc or in panels, the presence of six of the Board’s eleven members constitutes a quorum for transacting the business of the Board. See La. R.S. 42:1133 A.
The record before us does not reflect that the Board opted to sit en banc or in panels to consider the alleged violation by Great Southern. Rather, the matter was considered at a meeting where a quorum was present. We And no error in the procedure employed by the Board, and no error in the EAB’s denial of the motion to dismiss on this basis.
MOTION IN LIMINE
Prior to the public hearing before the EAB, Great Southern filed a motion in limine seeking to exclude the consent order between Griffin Towing and the Board, as well as any testimony regarding the consent order, arguing that that evidence was not relevant to the charges against Great Southern. The EAB found the evidence was relevant and denied the motion in limine. Great Southern assigns this as error.
The EAB may admit and give probative effect to evidence that possesses probative value commonly accepted by reasonably prudent men in the conduct of |17their affairs. La. R.S. 49:956, The EAB may exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. La. R.S. 49:956. If the evidence offered has probative value and is competent, relevant, material, and not unduly repetitious, the EAB may admit and consider it. See Martin v. State Licensing Bd. for Contractors, 14-0963, 2015 WL 1731007, p. 5 (La.App. 1 Cir. 4/10/15), writ. denied, 15-0919 (La.6/19/15), 172 So.3d 1091. Louisiana Code of Evidence article 401 defines “relevant evidence” as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
The EAB found the business relationship between Griffin Towing and Great Southern critical to the charge against Great Southern. Therefore, it concluded that Griffin Towing’s decision to acknowledge that accepting payments from Great Southern was an Ethics Code violation was relevant evidence. We agree and find no merit to this assignment of error. Moreover, we note that the violation was clearly established by other evidence and that Great Southern suffered no prejudice as a result of this alleged error,
MOTION FOR SUMMARY JUDGMENT
During the EAB proceedings, Great Southern filed a motion for summary judgment seeking dismissal of the charges. The EAB dismissed the motion on the basis that the summary judgment procedure is not available to either party under the APA. Great Southern contends this was error and points out that this court, in In re Fontenot, 14-0337, 2014 WL 7455199 (La.App. 1 Cir. 12/30/14), affirmed a summary judgment rendered by the EAB.
Under the judicial review standards of Section 49:964 G, the reviewing court may reverse or modify the decision of the EAB only if there is an error affecting the [ ^substantial rights of the appellant. Great Southern has failed to show that its substantial rights were prejudiced by the refusal to consider the motion for summary judgment. Great Southern had a full hearing on the merits of the charges, including the opportunity to present evidence and argument. We have determined that the Board sufficiently proved that Great Southern violated the Ethics *643 Code as charged. Therefore, even if Great Southern was entitled to file -a motion for summary judgment and the EAB erred in refusing to allow the filing, Great Southern was not entitled to summary judgment as a matter of law. Great Southern was not prejudiced by the alleged error, which does not support the modification or reversal of the decision of the EAB.
PENALTY
Finally, Great Southern argues that the $10,000.00 penalty imposed by the EAB is excessive. Great Southern contends that it is not a public servant and punishing it by imposing the maximum possible fine does not advance the goals of the Ethics Code. ...
Louisiana Revised Statute 42:1153 provides that a company, that violates the Ethics Code may be' fined up to $10,000.00.[3] The fine imposed should be commensurate with the dereliction. See Villanueva v. Commission on Ethics for Public Employees, 98-0980 (La.App. 1 Cir. 5/18/99), 812 So.2d 1, 6.
The EAB imposed the maximum fine after considering the business relationship between Great Southern and Griffin Towing, the amount of the contract between Great Southern and the Greater Lafourche Port Commission, and. the amounts of the prohibited payments from . Great Southern to Griffin Towing.- - We |1flfind that these were appropriate considerations and, based upon the record before us, cannot conclude that the EAB abused its discretion in imposing a $10,000.00 penalty.
CONCLUSION
For the foregoing reasons, the decision of the Ethics Adjudicatory Board is affirmed. Costs of this appeal are assessed to Great Southern Dredging, Inc.
AFFIRMED.
PETTIGREW, J. dissents and assigns reasons.

. The Ethics Code defines "person” as "an individual or legal entity other than a govem-mental entity, or an agency thereof.” La. R.S. 42:1102(16).

. In Louisiana Bd. of Ethics v. Randolph, 13-1509, 2014 WL 4198343 at p. 3 n. 3 (La.App. 1 Cir. 8/21/14), writ denied, 14-1987 (La.11/21/14), 160 So.3d 974, this court explained:
We are aware that in Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 759-60 (La.1983), the Supreme Court stated with little discussion that the Code of Ethics was not penal in nature. However, since Glazer was decided over thirty-years ago, the Supreme Court has held on several occasions, as has this Court, that statutes that impose civil fines or penalties are pe *638 nal in nature and must be strictly construed. See Katie Realty, Ltd. v. Louisiana Citizens Property Insurance Corporation, 12-0588 (La.10/16/12), 100 So.3d 324, 328-31; Iberia Medical Center v. Ward, 09-2705 (La.11/30/10), 53 So.3d 421, 433-34; Gibbs Construction Company, Inc. v. State, Department of Labor, 540 So.2d 268, 269 (La.1989). We believe the latter decisions indicate a shift in the Supreme Court’s position regarding the penal nature of statutes, including provisions of the Code of Ethics, that impose civil fines and penalties.

. See footnote 1, .supra; see also La. R.S, 42:1102(16).