CRAIN, J.
Walter C. Dumas and Walter C. Dumas & Associates, Inc., appeal a decision of the Louisiana Ethics Adjudicatory Board (Adjudicatory Board) finding they violated the Louisiana Code of Governmental Ethics (Ethics Code) and ordering them to pay $138,000.00 to the Louisiana Board of Ethics (Ethics Board). We affirm.
FACTS
Southern University is a public university managed by its Board of Supervisors (Board of Supervisors). See La. Const. art. 8, § 7. The Southern University System Foundation (Foundation) is a non-profit corporation established to support and promote Southern University and is a party to multiple contracts with the university. In an effort to generate revenue for Southern University's athletic department, the Foundation and Southern University entered a contract authorizing the Foundation to sublease suites at A.W. Mumford Stadium for Southern University's home football games and other athletic events. The Foundation then subleased the suites through a bidding process.
Pursuant to the stadium contract, from 2001 through 2009 the Foundation subleased 50-yard-line stadium suites to Walter Dumas and Associates, Inc., a law firm owned solely by Dumas and in which he was its senior attorney. In April 2006, Dumas became a member of the Board of Directors of the Foundation, and in January *596 2009, he was appointed to the Board of Supervisors.
Rental payments were made through 2005, then Dumas and the law firm made no payments during the 2006, 2007, and 2008 football seasons. The terms of the sublease covered those seasons beginning July 1, 2007, and ending June 30, 2009, and required a yearly rental payment of $13,800.00, plus a $96,600.00 donation to the Foundation, payable over three years. Dumas alleged that in 2006, for the millions of dollars in donations to the university for which Dumas was responsible, Dr. Ralph Slaughter, the then president of Southern University, advised Dumas that he did not have to make the remaining payments under the sublease.
In March 2009, as a member of the Board of Supervisors, Dumas voted to terminate Dr. Slaughter. In April 2009, Dr. Slaughter notified the Foundation that the amounts owed under Dumas' sublease were due and not paid. In June 2009, an invoice was sent to Dumas and the law firm demanding payment of $138,000.00 for the suite. The dispute was resolved in August 2009, when the Foundation voted to forgive any debt for suite rentals owed by Dumas or his law firm for 2006, 2007, and 2008.
These events were disclosed to the Ethics Board by a confidential source. In December 2010, charges were filed alleging violations of the Ethics Code: (1) against Dumas, for accepting forgiveness of a debt owed by the law firm to the Foundation, while Dumas was a member of the Board of Supervisors; and (2) against Dumas and the law firm, because by subleasing a stadium suite, the law firm had an interest in the stadium contract between Southern University and the Foundation, while Dumas, the law firm's sole owner, was a member of the Board of Supervisors. After a public hearing, the Adjudicatory Board affirmed the charges and ordered Dumas and the law firm to pay $138,000.00 to the Ethics Board as recovery of an improper economic advantage gained by using the stadium suite for three years without payment.
Dumas and the law firm appeal, urging nineteen assignments of error:[1]
1) It was error ... [for] the [Adjudicatory Board] to conclude Appellants fell under the definition of a public employee when the charges as set forth by the [Ethics Board] occurred;
2) It was error ... [for] the ... Adjudicatory Board to conclude Appellant, Walter C. Dumas, during the years 2006, 2007, and 2008 was a public servant within the meaning of the [Ethics] Code;
3) It was error ... [for] the ... Adjudicatory Board denied [sic ] Appellants, Walter C. Dumas & Associates, Inc., and Walter C. Dumas', Motion to Dismiss;
4) It was error ... [for] the ... Adjudicatory Board to dismiss Appellants' Motion for Summary Judgment;
5) It was error ... [for] the ... Adjudicatory Board to conclude there was a contract for a football suite between the Foundation and Walter C. Dumas & Associates, Inc., on August 20, 2009;
6) It was error ... [for] the ... Adjudicatory Board to conclude the action of Foundation board, former President of the Southern University System Dr. Slaughter did not tacitly *597 or by action ratified [sic ] the use of the football suite by Appellants for the years 2006, 2007, and 2008 without paying the rental charges;
7) It was error ... [for] the ... Adjudicatory Board to conclude that Appellants who were not subject to the Louisiana Ethics Code until January 9, 2009, received as an economic value for using the football suite for the years 2006, 2007, and 2008 without having to pay for the suite [sic ];
8) It was error ... [for] the ... Adjudicatory Board to conclude Appellant, Walter C. Dumas & Associates, Inc., received a thing of economic value when Appellant did not have a contractual and financial relationship with Southern University System Foundation;
9) It was error ... [for] the ... Adjudicatory Board to conclude Appellants receiving [sic ] a thing of economic value when respondent had a contractual and financial relationship with Southern University System Foundation;
10) It was error ... [for] the .... Adjudicatory Board to conclude that on August 20, 2009, there was a contract between the Foundation and Southern University in which Appellant, Walter C. Dumas, had an economic interest;
11) It was error ... [for] the .... Adjudicatory Board to conclude as a matter of law, that Appellants, Walter C. Dumas and Associates, Inc., and Walter C. Dumas, received a thing of value and/or was interested in a contract between the period of January 9, 2009 to June 30, 2009;
12) It was error ... [for] the ... Adjudicatory Board to conclude that a legal entity, Walter C. Dumas & Associates, Inc. owned by Walter C. Dumas had a contract for a football suite with the Southern University Foundation between January 9, 2009, to June 30, 2009;
13) It was error ... [for] the ... Adjudicatory Board not to apply [Louisiana Revised Statute] 42:1113B and [Louisiana Revised Statute] 42:1115A as adopted and passed by the legislature;
14) It was error ... [for] the ... Adjudicatory Board to conclude as a matter of law, Walter C. Dumas & Associates, Inc., violated the [Ethics Code];
15) It was error ... [for] the ... Adjudicatory Board to conclude as a matter of law, Walter C. Dumas violated the [Ethics Code];
16) It was error ... [for] the ... Adjudicatory Board to assess a fine of $138,000 on Walter C. Dumas & Associates, Inc.;
17) It was error ... [for] the ... Adjudicatory Board to assess a fine of $138,000 on Walter C. Dumas;
18) It was error ... [for] the ... Adjudicatory Board to give an economic value to a written-off debt on behalf of Appellants before Appellants were subject to the ... Ethics Code; and
19) It was error ... [for] the ... Adjudicatory Board to conclude that the contract covering the period July 1, 2007, to June 30, 2009 was a valid contract.
DISCUSSION
The Ethics Code was enacted to establish ethical standards to protect against conflicts of interest between the private interests of public servants and the duties *598 of their public positions. See La. R.S. 42:1101B; Louisiana Bd. of Ethics in re Great S. Dredging, Inc. , 15-0870 (La. App. 1 Cir. 5/27/16), 195 So.3d 631, 634, writ denied, 16-1208 (La. 10/17/16), 207 So.3d 1063. The Ethics Code prohibits not only actual conflicts of interest, but also the appearance of impropriety by preventing situations that create the perception of conflicts of interest. Villanueva v. Comm'n on Ethics for Pub. Employees, 98-0980 (La. App. 1 Cir. 5/18/99), 812 So.2d 1, 5. The Ethics Board is responsible for investigating and issuing charges for violations of the Ethics Code. See La. R.S. 42:1141C. The Adjudicatory Board then conducts a hearing to determine whether any violations have occurred. See La. R.S. 42:1141C.
Proceedings before the Adjudicatory Board and judicial review of its decisions are governed by the Louisiana Administrative Procedure Act. See La. R.S. 42:1143 ; La. R.S. 49:950 et seq. ; Louisiana Bd. of Ethics in re Great S. Dredging, Inc. , 195 So.3d at 634. Thus, judicial review is confined to the record developed in the administrative proceeding, and the Adjudicatory Board's decision may be reversed or modified only if substantial rights of the appellant are prejudiced because the findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. La. R.S. 49:964G. Owing no deference to the legal findings of the Adjudicatory Board, the reviewing court reviews questions of law de novo, then renders judgment on the record. Louisiana Bd. of Ethics in re Great S. Dredging, Inc. , 195 So.3d at 634.
La. R.S. 42:1115A
Dumas was charged with violating Louisiana Revised Statute 42:1115A, which provides:
No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency, or
(2) Is seeking, for compensation, to influence the passage or defeat of legislation by the public servant's agency.
The elements of a violation of Section 42:1115A are (1) a public servant, (2) accepting, directly or indirectly, a thing of economic value, (3) from a prohibited source. The Adjudicatory Board found that Section 42:1115A was violated on August 20, 2009, by Dumas accepting a gift of $138,000.00 from the Foundation when he knew or reasonably should have known the Foundation had a contractual relationship with Southern University.
Public Servant
Section 42:1102 of the Ethics Code defines a "public servant," in relevant part, as a "public employee," which is anyone, whether compensated or not, who is:
(i) An administrative officer or official of a governmental entity who is not filling an elective office.
(ii) Appointed by any elected official when acting in an official capacity, and the appointment is to a post or position wherein the appointee is to serve the governmental entity or an agency thereof, either as a member of an agency, or as an employee thereof.
*599 (iii) Engaged in the performance of a governmental function.
(iv) Under the supervision or authority of an elected official or another employee of the governmental entity.
Dumas does not dispute that he became a public servant in January 2009, when he was appointed to the Southern University Board of Supervisors. Assignments of error numbered one and two are without merit.
A Thing of Economic Value
Section 42:1102(22) of the Ethics Code generally defines a "thing of economic value" as "money or any thing having economic value." The Adjudicatory Board determined that Dumas indirectly received a thing of economic value when, in August 2009, the Foundation forgave the suite rental debt owed by the law firm. Dumas does not dispute that forgiveness of a debt is a thing of economic value. Rather, he argues that the debt forgiveness had no economic value because in August 2009, no suite rentals were owed for 2006 through 2008, so there was nothing to forgive. This argument is premised upon the contention that in 2006, Dr. Slaughter relieved Dumas of any responsibility for those suite rentals.
As proof of the debt, the Ethics Board presented a contract that obligated the law firm to pay $138,000.00 to sublease the suites for the 2006, 2007, and 2008 football seasons. The contract was signed by Dumas on behalf of the law firm. In defense, Dumas testified that in 2006, Dr. Slaughter, while president of Southern University, told Dumas that he did not have to pay the stadium suite rentals.
Dr. Slaughter denied telling Dumas he did not have to pay the the amounts required by the sublease. He testified that he had no authority to unilaterally relieve anyone of an obligation due to either Southern University or the Foundation. To support this testimony, the Ethics Board presented the Foundation's by-laws, which require a quorum of the Board of Directors of the Foundation to conduct business. Thus, even if Dr. Slaughter told Dumas he did not have to pay the amounts under the sublease, the Ethics Board established that only the Foundation board could waive any amounts due.
As further evidence that the suite rentals were not forgiven during Dr. Slaughter's tenure as president of Southern University, the Ethics Board presented the Foundation's financial audit dated December 31, 2009, after Dr. Slaughter was terminated as president, which still referenced a $138,000.00 receivable due from "a board member." The Ethics Board also introduced the June 2009 invoice sent to Dumas demanding payment of the amounts under the sublease.
Finally, the Ethics Board presented minutes from the August 20, 2009 Foundation board meeting. Therein, the Foundation acknowledged not billing Dumas for amounts under the sublease at the direction of Dr. Slaughter, but clarified that "[t]his decision was not ratified by the Board at that time. " (Emphasis added.) At the same meeting, a motion authorizing a resolution to be drafted to release and forgive any debt owed by Dumas or the law firm for suite rentals for 2006 through 2008, was seconded and carried. Another excerpt from the minutes of the August 20, 2009 meeting establishes that a motion was made to "ratify the 2006 decision to forgive any debt owed" by Dumas and the law firm, and states:
NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF DIRECTORS OF SOUTHERN UNIVERSITY SYSTEM FOUNDATION AS FOLLOWS:
*600 That Walter C. Dumas, Dumas and Associates Law Corporation, and Dumas & Associates Law Firm, LLC be and are hereby released and forgiven any debt to Southern University for the rental of a Jaguar suite for the years 2006, 2007 and 2008.
This Resolution was declared to be adopted on this 20th day of August, 2009.
Dumas argues that because the Foundation ratified Dr. Slaughter's 2006 decision to allow Dumas to use the suites without payment, the debt was already forgiven and did not exist as of August 20, 2009. "Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority." La. Civ. Code art. 1843. We find that the Foundation board's ratification of Dr. Slaughter's 2006 decision confirms that Dr. Slaughter did not have the authority to forgive the suite debt. The debt remained due and owing until the Foundation ratified the debt forgiveness decision on August 20, 2009. There is no merit to the argument that the August 20, 2009 ratification extinguished the debt effective in 2006, making the debt forgiveness of no economic value in 2009.
Similarly, Dumas argues the debt forgiveness in 2009 had no economic value because the debt was "written off" as of December 31, 2008, before Dumas' appointment to the Board of Supervisors. This court has previously recognized that the accounting procedure of writing off a debt effective on an earlier date does not, without more, constitute a remission of the debt on that earlier date. See Brown v. Adolph , 96-1257 (La. App. 1 Cir. 3/27/97), 691 So.2d 1321, 1326-27. Assignment of error number eighteen is without merit.
Dumas also contends that the Ethics Board, in a brief filed early in these proceedings, judicially confessed that the debt was forgiven as of December 31, 2008, making the August 20, 2009 ratification resolution of no economic value. A judicial confession is a declaration made by a party in a judicial proceeding and constitutes full proof against the party who made it. La. Civ. Code art. 1853 ; C.T. Traina, Inc. v. Sunshine Plaza, Inc., 03-1003 (La. 12/3/03), 861 So.2d 156, 159.
The brief relied upon by Dumas quotes the following from a Legislative Auditor's report dated May 19, 2010:
During the year ended December 31, 2008, the Foundation recorded a receivable from a Foundation board member in the amount of $138,000. The receivable consisted of amounts due from a contract for the rental of a stadium suite in Mumford Football Stadium for the 2006, 2007, and 2008 football seasons. The board member indicated that in light of other contributions made to the System, the receivable was actually forgiven simultaneously as the contract was signed, resulting in no amounts being due from the board member. However, there was no supporting documentation to support the forgiveness. At a board meeting subsequent to year-end, the Foundation board voted to ratify the forgiveness of the debt, and as such, the debt was written off as of December 31, 2008.
The brief further explained:
Dumas argues that the debt was written-off as of December 31, 2008 ... However, this is not an accurate or complete description of the actions that occurred.
...
On August 20, 2009 [Walter Dumas was a member of both the SU Foundation and the SU Board of Supervisors at this time], the SU Foundation Board of Directors met and voted to forgive the debt owed by Dumas. As such, Dumas *601 received a gift from a prohibited source on August 20, 2009. Although for financial purposes the debt was forgiven as of December 31, 2008, the actual granting of the forgiveness -the gift-occurred at a prohibited time. [Footnotes omitted and italics added.]
The brief clearly distinguishes between the effect of a write-off for accounting purposes as opposed to legal purposes. We agree with that distinction. Dumas' argument that the brief contains a judicial confession that the debt was not due at the time of the ratification resolution is without merit.
The evidence presented by the Ethics Board established that until the Foundation board voted to forgive the debt on August 20, 2009, the debt was due and owing. When the Foundation board acted, Dumas, a member of the Board of Supervisors, indirectly accepted a thing of economic value-he forgiveness of the $138,000.00 debt owed by the law firm.
Prohibited Source
Section 42:1115A defines a prohibited source as an entity that the public servant knows or reasonably should know has a contractual or financial relationship with the public servant's agency. Dumas does not dispute that on August 20, 2009, as a member of the Board of Supervisors, he was a public servant and his agency was Southern University. Dumas also does not dispute that as a member of both the Board of Supervisors and the Foundation board, he knew or reasonably should have known that Southern University and the Foundation had contractual and financial relationships with each other. Therefore, for purposes of the Ethics Code, the Foundation was a prohibited source for Dumas.
The Adjudicatory Board did not err in finding Dumas violated Section 42:1115A. The evidence establishes that on August 20, 2009, Dumas (a public servant) received a thing of economic value (the debt forgiveness) from the Foundation (a prohibited source), which he knew or reasonably should have known had a contractual and financial relationship with Dumas' agency (Southern University). Assignments of error numbered six, seven, eight, and nine are without merit.
La. R.S. 42:1113B
Dumas and the law firm were charged with violating Louisiana Revised Statute 42:1113B, which provides:
Other than a legislator, no appointed member of any board or commission, member of his immediate family, or legal entity in which he has a substantial economic interest shall ... be in any way interested in any contract, subcontract, or other transaction which is under the supervision or jurisdiction of the agency of such appointed member.
The elements of a violation of Section 42:1113B are (1) a board member or legal entity in which he has a substantial economic interest, (2) in any way interested in a contract, (3) under the supervision or jurisdiction of the board member's agency.
It is undisputed that Dumas was appointed to the Board of Supervisors in January 2009, Southern University was Dumas' agency, and the law firm was a legal entity in which Dumas, its sole member, had a substantial economic interest. The Adjudicatory Board found that the stadium contract between Southern University and the Foundation was incorporated into the sublease by reference, and the sublease expressly provided that it was not binding until approved by the landlord/lessor, identified as Southern University. The sublease was signed by Edward R. Jackson as chancellor and representative of Southern University. Upon these facts, the Adjudicatory Board concluded that, for purposes of Section 42:1113B, the *602 sublease was under the supervision of Southern University.
The Adjudicatory Board's conclusion that through the sublease Dumas had an interest in a contract under the supervision or jurisdiction of Southern University is reasonably supported by the record.[2] What Dumas now challenges is the finding that he and the law firm had an interest in a contract under Southern University's supervision after Dumas' January 2009 appointment to the Board of Supervisors.
The sublease was entered before Dumas was a member of the Board of Supervisors. However, in contrast to other provisions of the Ethics Code prohibiting actions by public servants, Section 42:1113B does not except contracts that do not violate Section 42:1113B when they are entered. Compare La. R.S. 42:1113D(2)(d) (specifying that the prohibition against particular persons entering contacts with state government does not extend to the completion of a contract which, at the time it was entered, was not prohibited by that subsection). Therefore, a violation of Section 42:1113D simply requires proof that the sublease remained in effect after Dumas was appointed to the Board of Supervisors.
Dumas contends that because the 2008 football season had ended as of December 31, 2008, and a new season did not begin until after the debt forgiveness resolution on August 20, 2009, he was not interested in a prohibited contract while a member of the Board of Supervisors. The sublease for the 2006, 2007, and 2008 football seasons introduced by the Ethics Board and accepted by the Adjudicatory Board is not limited to the dates of a particular football season or to football seasons alone. Rather, the sublease is effective from July 1, 2007, to June 30, 2009, and covers football games and "other athletic events/activities, and other times as expressly agreed to by the parties in writing." The Adjudicatory Board correctly concluded that the sublease was in effect for six months after Dumas was appointed to the Board of Supervisors. Assignments of error numbered five, ten, eleven, and twelve are without merit.
On appeal, Dumas challenges the validity of the sublease introduced at the hearing, arguing he did not remember signing it, there was no testimony by either Chancellor Jackson or Curtis Lee (who signed the sublease for the Foundation), and the date Dumas and Lee purportedly signed the sublease is whited out. We find no merit to these arguments. In administrative hearings, although the usual rules of evidence do not apply, the findings of the agency must be supported by competent evidence. Board of Ethics Matter of Monsour , 16-1159 (La. App. 1 Cir. 6/21/17), 233 So.3d 625 (2017 WL 2692679). Dumas did not deny signing the sublease, but said he did not remember doing so. He admits the law firm entered a sublease for the 2006, 2007, and 2008 football seasons, and he produced no other contract signed by all parties and covering those years. The Adjudicatory Board did not err in finding the sublease contract to be competent evidence. Assignment of error number nineteen is without merit.
*603 The record supports the Adjudicatory Board's determinations that Dumas violated Sections 42:1115 and 42:1113, and the law firm violated Section 42:1113 of the Ethics Code.[3] Assignments of error numbered thirteen, fourteen, and fifteen are without merit. We find no merit in the numerous assignments of error urged by Dumas challenging the Adjudicatory Board's determinations.
THE PENALTY
The Adjudicatory Board assessed a penalty of $138,000.00 against Dumas and the law firm, in solido , as recovery of an improper economic advantage. Dumas first argues that because neither he nor the law firm violated the Ethics Code, they cannot be liable for or assessed a fine. For the reasons previously discussed, which support the Adjudicatory Board's determination that both Dumas and the law firm violated the Ethics Code, this argument is without merit.
Alternatively, Dumas contends that even if there was a violation, there cannot be solidary liability because only the law firm was a party to the sublease and the law firm is legally responsible for its own actions. An obligation is solidary when each obligor is liable for the whole performance. La. Civ. Code art. 1794. In his brief, Dumas devotes two sentences to this argument. We construe the argument to be that Dumas, individually, cannot be assessed the $138,000.00 penalty.[4]
Violations of the Ethics Code are subject to fines of up to $10,000.00. See La. R.S. 42:1153. When a violation results in an economic advantage, additional penalties may include recovery of an amount equal to the economic advantage gained, plus penalties not to exceed one half of that amount, and forfeiture of any gifts or payments in violation of the Ethics Code. See La. R.S. 42:1155 ; Duplantis v. Louisiana Bd. of Ethics , 00-1956 (La. 3/23/01), 782 So.2d 582, 588. The Adjudicatory Board determined that Dumas, individually, violated the Ethics Code by indirectly accepting a thing of economic value, the forgiveness of a $138,000.00 debt owed by the law firm. The Adjudicatory Board determined the violation resulted in an economic advantage of $138,000.00 to Dumas. The determination of the Adjudicatory Board is reasonably supported by the record, and Dumas has presented no argument or evidence that compels this court to reverse or modify that determination. Assignment of error number seventeen is without merit. In accordance with Section 49:964G, we affirm the penalties assessed by the Adjudicatory Board.
CONCLUSION
After reviewing the record of the proceedings before the Adjudicatory Board in accordance with Section 49:964G, we find no basis for modification or reversal of the Adjudicatory Board's decision and that decision is affirmed. Costs of this appeal are *604 assessed to Walter C. Dumas and Walter C. Dumas and Associates, Inc.
AFFIRMED.
Guidry, G. concurs in the result.

Because Dumas and the law firm filed a single brief, and for ease of reference, we will refer to the arguments made on appeal as being made by Dumas.

In his original appellate brief, Dumas did not dispute this finding. However, in his reply brief, Dumas' argument regarding the validity of the contract includes a statement to the effect that the contract was between the law firm and the Foundation, a private, non-profit corporation, and therefore was not subject to the supervision of the Board of Supervisors. To the extent that this statement can be considered a challenge to the Adjudicatory Board's finding, it has no merit. The Adjudicatory Board's finding on this issue is supported by the record.

Considering these determinations, the issues identified in assignments of error numbered three (that the Adjudicatory Board erred in denying a motion to dismiss the charges filed early in these proceedings) and four (that the Adjudicatory Board erred in dismissing his motion for summary judgment) are moot. Further, these assignments of error were not briefed as required by Uniform Rules, Courts of Appeal, Rule 2-12.4B(4), and are considered abandoned.

In the list of assignments of error set forth in the appellate brief, number sixteen is "It was error of Panel B of the Adjudicatory Board to assess a fine of $138,000 on [the law firm.]" Dumas did not brief the issue of the penalty being assessed to the law firm and, in fact, argues if there were violations, only the law firm should be assessed the penalty. We consider this issue abandoned. See Uniform Rules, Courts of Appeal, Rule 2-12.4B(4).