STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0994

WALTER C. DUMAS

VERSUS

THE LOUISIANA BOARD OF ETHICS

Judgment Rendered: __FEB 2 4 2023__

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 698747

The Honorable Martin E. Coady, Judge Pro Tempore Presiding

Travis J. Turner
Gonzales, Louisiana

Jeff Landry
Louisiana Attorney General
Harry J. Phillips, Jr.
John P. Murrill
Special Assistant Attorneys General
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellant,
Walter C. Dumas

Counsel for Defendant/Appellee,
The Louisiana Board of Ethics

BEFORE: GUIDRY, C.J., WOLFE, AND MILLER, JJ.

**MILLER, J.**

Walter C. Dumas ("Dumas") appeals a judgment by the Nineteenth Judicial District Court sustaining the peremptory exception of prescription in favor of the Louisiana Board of Ethics ("BOE") and dismissing Dumas's petition against the BOE with prejudice. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY[1]

Southern University and Agricultural & Mechanical College ("Southern University") is a public university managed by its Board of Supervisors. See La. Const. art. 8, § 7. The Southern University System Foundation ("Foundation") is a non-profit corporation established to support and promote Southern University and is a party to multiple contracts with the university. To generate revenue for Southern University's athletic department, the Foundation and Southern University entered into a contract authorizing the Foundation to sublease suites at A.W. Mumford Stadium for Southern University's home football games and other athletic events. The Foundation then subleased the suites through a bidding process.

Pursuant to the stadium contract, from 2001 through 2009 the Foundation subleased 50-yard-line stadium suites to Walter Dumas and Associates, Inc., a law firm owned solely by Dumas and in which he was its senior attorney. In April 2006, Dumas became a member of the Board of Directors of the Foundation, and in January 2009, he was appointed to the Board of Supervisors.

Rental payments were made through 2005, then Dumas and the law firm made no payments during the 2006, 2007, and 2008 football seasons. The terms of the sublease covered those seasons beginning July 1, 2007, and ending June 30,

---

[1] These facts are taken in part from prior appeals. See Dumas v. Board of Ethics, 2019-0289 (La. App. 1st Cir. 11/15/19), 290 So. 3d 1143, writ denied, 2019-02017 (La. 2/10/20), 294 So. 3d 475; and Louisiana Board of Ethics, 2017-0313 (La. App. 1st Cir. 11/16/17), 236 So. 3d 593, writ denied sub nom., Louisiana Board of Ethics in Matter of Dumas, 2018-0132 (La. 3/9/18), 238 So. 3d 457.

2

2009, and required a yearly rental payment of $13,800.00, plus a $96,600.00 donation to the Foundation, payable over three years. Dumas alleged that in 2006, for the millions of dollars in donations to the university for which Dumas was responsible, Dr. Ralph Slaughter, then president of Southern University, advised Dumas that he did not have to make the remaining payments under the sublease.

In March 2009, as a member of the Board of Supervisors, Dumas voted to terminate Dr. Slaughter. Dr. Slaughter then notified the Foundation that the amounts owed under Dumas's sublease were due and not paid. Subsequently, in June 2009, an invoice was sent to Dumas and the law firm demanding payment of $138,000.00 for the suite. However, in August 2009, the Foundation voted to forgive any debt for suite rentals owed by Dumas or his law firm for 2006, 2007, and 2008.

These events were disclosed to the BOE by a confidential source. In December 2010, charges were filed alleging violations of the Ethics Code: (1) against Dumas, for accepting forgiveness of a debt owed by the law firm to the Foundation, while Dumas was a member of the Board of Supervisors; and (2) against Dumas and the law firm, because by subleasing a stadium suite, the law firm had an interest in the stadium contract between Southern University and the Foundation, while Dumas, the law firm's sole owner, was a member of the Board of Supervisors. After a public hearing, the Ethics Adjudicatory Board ("Adjudicatory Board") affirmed the charges and ordered Dumas and the law firm to pay $138,000.00 to the BOE as recovery of an improper economic advantage gained by using the stadium suite for three years without payment. Dumas and the law firm appealed the Adjudicatory Board's decision. On November 16, 2017, this court affirmed the decision of the Adjudicatory Board. See Louisiana Board of Ethics, 2017-0313 (La. App. 1ˢᵗ Cir. 11/16/17), 236 So. 3d 593, 603, 236 So. 3d

3

593, <u>writ denied sub nom.</u>, <u>Louisiana Board of Ethics in Matter of Dumas</u>, 2018-0132 (La. 3/9/18), 238 So. 3d 457.

On August 14, 2020, Dumas filed a petition for damages against the BOE alleging that he suffered emotional distress, anxiety, inconvenience, attorney fees, costs, civil penalties, and other damages because of the BOE's discriminatory actions, wrongful and malicious actions, and gross negligence. Dumas asserted that he was not aware of the alleged racial discrimination by the BOE until August 14, 2019 when he read a news article that the BOE declined to investigate the Superintendent of the Louisiana State Police, Michael Edmonson ("Superintendent Edmonson"), for living on the Department of Public Safety Compound without authority from February 2008 to March 2017. Dumas also contended that the BOE's decision in 2005 regarding the Chancellor of the University of New Orleans, Gregory O'Brien ("Chancellor O'Brien"), is an example of racial discrimination. In 2005, the BOE found that Chancellor O'Brien violated the Code of Governmental Ethics by receiving supplemental compensation, business advances, and other expenses from foundations affiliated with the University of New Orleans but imposed no fine.

On October 13, 2020, the BOE answered the petition, and on May 11, 2021, the BOE filed a peremptory exception of prescription. The BOE alleged that Dumas's claim that the BOE discriminated against him based on his race was prescribed. In opposition, Dumas asserted that he learned of the racially discriminatory actions of the BOE on August 14, 2019, and he filed his lawsuit on August 11, 2020, so his petition was timely filed. A hearing on the exception was held on March 7, 2022. At the end of the hearing, the trial court sustained the BOE's exception. On March 16, 2022, the trial court signed a judgment sustaining the BOE's exception and dismissing Dumas's petition against the BOE with prejudice. It is from this judgment that Dumas appeals.

4

## ASSIGNMENT OF ERROR

Dumas contends that the trial court erred when it sustained the peremptory exception of prescription because under the doctrine of *contra non valentem* his lawsuit is not prescribed.

## STANDARD OF REVIEW

Except in limited instances not applicable here, the exception of prescription must be specifically pleaded and may not be supplied by the court. La. C.C.P. art. 927(B). Ordinarily, the exceptor bears the burden of proof at the trial on the peremptory exception. Carter v. Haygood, 2004-0646 (La. 1/19/05), 892 So. 2d 1261, 1267. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Id. The standard of review of a judgment pertaining to an exception of prescription turns on whether evidence is introduced at the hearing on the exception. Louisiana Code of Civil Procedure article 931 expressly allows evidence to be introduced to support or controvert a peremptory exception, when the grounds thereof do not appear from the petition.

If no evidence is submitted at the hearing, the exception must be decided upon the facts alleged in the petition with all of the allegations accepted as true. In that case, the reviewing court is simply assessing whether the trial court erred as a matter of law. Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C., 2021-00061 (La. 12/10/21), 333 So. 3d 368, 373. When evidence is introduced at the hearing, a court need not accept the allegations of the petition as true, and the lower court decisions are to be reviewed under a manifest error standard of review. Lomont v. Bennett, 2014-2483 (La. 6/30/15), 172 So. 3d 620, 627. In this case, no evidence was introduced at the hearing. Thus, we must determine whether the trial court erred as a matter of law. See Mitchell, 333 So. 3d at 373.

5

## DISCUSSION

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. La. C.C. art. 3492. Prescription runs against all persons unless they are included in some exception established by law. La. C.C. art. 3467. In this case, the alleged injury or damage was sustained in July 12, 2016 when the Adjudicatory Board affirmed the charges against Dumas and ordered him to pay $138,000.00. Thus, under Article 3492, Dumas had one year from July 12, 2016 to file his suit. However, the instant suit was not filed until August 11, 2020. Thus, prescription is evident on the face of the pleadings.

Dumas contends that pursuant to the doctrine of *contra non valentem*, the prescriptive period did not begin to run until August 14, 2019 when he first learned of the alleged racial discrimination by the BOE. The doctrine of *contra non valentem* provides that prescription does not run against one who is ignorant of the facts upon which his cause of action is based and applies an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. Eastin v. Entergy Corp., 2003-1030 (La. 2/6/04), 865 So. 2d 49, 55. Louisiana courts have recognized four limited situations where the doctrine applies. See Wells v. Zadeck, 2011-1232 (La. 3/30/12), 89 So. 3d 1145, 1150. The four instances where *contra non valentem* can be applied to prevent the running of prescription are: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though

this ignorance is not induced by the defendant. Id. Each situation allows the courts to weigh the "equitable nature of the circumstances in each individual case" to determine whether prescription will be tolled. Carter, 892 So. 2d at 1268.

The sole argument raised on appeal by Dumas relates to the fourth jurisprudentially recognized situation known as the "discovery rule," which provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Eastin, 865 So. 2d at 55. Under the discovery rule, prescription begins to run when a party has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." Babineaux v. State ex rel. Dept. of Transp. and Development, 2004-2649 (La. App. 1st Cir. 12/22/05), 927 So. 2d 1121, 1123.

An injured party has constructive notice when he possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry. Id. The prescriptive period commences when enough notice to call for an inquiry of a claim exists, not when an inquiry reveals the facts or evidence to sufficiently prove the claim. Id. at 1125. The doctrine will not exempt a plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could have learned by reasonable diligence. Renfroe v. State ex rel. Dept. of Transp. and Development, 2001-1646 (La. 2/26/02), 809 So. 2d 947, 953.

Dumas contends that the BOE discriminated against him based on his race in July 2016 but he was not aware of the alleged racial discrimination until August 14, 2019 when he read a news article about a case the BOE investigated involving Superintendent Edmonson. However, in his petition, Dumas discusses the BOE's treatment of Chancellor O'Brien in comparison to his case. On March 10, 2005, the BOE found that Chancellor O'Brien violated the Code of Governmental Ethics but imposed no fine. Dumas alleges that Chancellor O'Brien's situation is

comparable to his situation, but Chancellor O'Brien's matter had a more favorable outcome than Dumas's matter because Chancellor O'Brien is white. The BOE's opinion regarding Chancellor O'Brien occurred more than ten years before the BOE's decision in the Dumas matter. The opinion is published by the BOE on its website, which allows the public to quickly and easily review opinions and decisions rendered by the board.[2] See La. R.S. 42:1159.

Nothing prevented Dumas from asserting his claim of racial discrimination within one year from the BOE's decision against him. Dumas alleges no facts which show that his delay in filing suit is reasonable. Dumas may not neglect to investigate an unfavorable decision and expect his actions to be deemed reasonable. See Eastin, 865 So. 2d at 56. Under the facts of the instant case, where Dumas alleged no inquiry to determine if the BOE's decision was for unlawful reasons nor made an inquiry into the reasons for the BOE's decision, Dumas's delay in filing suit was not reasonable and does not merit the application of the doctrine of *contra non valentem*. This case does not present exceptional circumstances that warrant application of the doctrine. Thus, in sustaining the exception, the trial court did not err as a matter of law. Dumas's assignment of error is without merit.

## CONCLUSION

The judgment by the Nineteenth Judicial District Court sustaining the peremptory exception of prescription in favor of the Louisiana Board of Ethics and dismissing Walter C. Dumas's petition against the Louisiana Board of Ethics with prejudice is affirmed. All costs of this appeal are assessed to Walter C. Dumas.

**AFFIRMED.**

---

[2] Rulings, advisory opinions, and consent opinions of the BOE can be found at ethics.la.gov/ethicsopinion.